Public Utilities Commission
No. 79-137

MERL L. O'NEIL & a.

v.

PUBLIC UTILITIES COMMISSION & a.

December 28, 1979

*John J. Wholey* and *Bernard W. Pelech*, of Portsmouth (*Mr. Pelech* orally), for the plaintiffs.

*Thomas D. Rath*, attorney general (*David W. Jordan*, assistant attorney general, orally), for the Public Utilities Commission.

GRIMES, C.J. In this appeal pursuant to RSA 541:6, petitioners attack certain orders of the State public utilities commission (hereinafter the commission) authorizing a competitor to operate as a common and contract carrier of disabled motor vehicles. The issues before the court relate to the adequacy of notice provided interested parties prior to a hearing on the matter, and the sufficiency of the evidence to support the commission's determination that the public convenience and necessity would be served by the challenged permits. Finding no error in the proceedings below, we uphold the commission's orders.

The facts of this case appear undisputed. On January 19, 1979, an application was filed with the commission by one Armand R. Mastropietro, d/b/a Armand's Auto Body, whereby the applicant sought authority to operate as a common and contract carrier of wrecked, disabled, repossessed, and stolen motor vehicles between all points within a twenty-five mile radius of the town of Newfields. The matter was set for hearing on February 23, 1979, and by order of notice issued January 23, 1979, the applicant was directed to publish said notice "once in a newspaper having general circulation in that portion of the state in which operations are proposed to be conducted." Pursuant to the order, the applicant caused the order of notice to be published in the *Rockingham County Gazette—Exeter Edition*, on February 7, 1979. This is a weekly free newspaper which, according to petitioners, has a circulation of some 17,000 in seventeen towns around Newfields, including Exeter but not including Portsmouth, Dover, or

Hampton. At or about this time, the commission undertook to mail copies of the order of notice to the New Hampshire Towing Association and seventeen towing companies located in the Portsmouth, Hampton, and Exeter area.

At the February 23, 1979 hearing, the applicant appeared pro se with the director of the American Automobile Association (AAA) and a police representative as witnesses. The applicant testified that there were no other holders of commission authority in Stratham, Greenland, or Newfields, and produced letters from customers and the police chiefs from those three towns in support of his application. The AAA representative testified concerning a proposed contract for emergency road service with the applicant in Newfields and the surrounding area. The police representative from Newfields testified that the applicant was the only wrecker called by his department.

Three towing operators appeared in opposition to the application. Two of the opponents, both from Exeter, testified. The first operator, who provided services in three counties, stated that there were numerous operators within the twenty-five-mile radius area of operations requested by the applicant. The other operator stated that he does an active business in Stratham where the applicant is his main competitor. He acknowledged, however, not having many calls from Newfields lately.

Following the hearing, in an opinion dated April 19, 1979, the commission found that the applicant was fit, willing, and able to perform the service proposed; that he would conform to its rules and regulations; and that the public convenience and necessity would be served thereby. Accordingly, the commission granted the applicant authority to operate as a common carrier of property for hire by motor vehicle "of wrecked, disabled, repossessed and stolen motor vehicles *from and within* the Towns of Newfields, Greenland, and Stratham *to* a radius of 25-miles *from* the Town of Newfields;" and as a contract carrier of "wrecked and disabled motor vehicles between all points and places within a 10-mile radius of the Town of Newfields . . .," pursuant to the AAA agreement. (Emphasis in original.)

Subsequent to the commission's order, on May 9, 1979, the petitioners, fourteen authorized common and/or contract carriers having places of business within the twenty-five mile radius of the Town of Newfields, pursuant to RSA 541:3 filed a motion for a rehearing with the commission. By its order dated May 17, 1979, the commission denied the petition for rehearing. Thereupon, petitioners sought appeal to this court.

Petitioners first challenge the validity of the commission's orders on the ground that there was insufficient notice given interested parties

of the proposed February 23, 1979 hearing. They acknowledge that the applicant did cause the order of notice to be published in the *Rockingham County Gazette—Exeter Edition.* They contend, however, that such publication was inadequate inasmuch as eleven of the petitioners, although maintaining places of business within the applicant's proposed area of operation, were not within the circulation area of the newspaper and thus received no actual notice therefrom. Petitioners contend either that the publication chosen by the applicant was inadequate for purposes of the January 23, 1979 order of notice directing publication to "all persons desiring to be heard . . . in that portion of the state in which operations are proposed to be conducted . . . ;" or, alternatively, if the publication utilized satisfied the commission's order, that the actual notice rendered was unreasonably deficient as a matter of due process.

We assume, *arguendo,* that the petitioners have sufficiently compelling interests at stake in the challenged proceedings to trigger the procedural protections of the due process clause of the fourteenth amendment. *See North Alabama Express, Inc. v. United States,* 585 F.2d 783 (5th Cir. 1978). *But see Carter v. City of Nashua,* 116 N.H. 466, 362 A.2d 191 (1976). We conclude, nevertheless, that the notice provided pursuant to the commission's order of notice was adequate.

■ ■ Initially, we note that due process does not necessarily mandate actual notice. "All that is required is that . . . the notice involved [be] reasonably calculated to apprise the interested party of the pendency of the action . . . ." *North American Pharmacal, Inc. v. Dep't of H.E.W.,* 491 F.2d 546, 551 (8th Cir. 1973). In the *North American Pharmacal* case, the court sustained the termination by administrative proceedings of certain proprietary interests of drug manufacturers where the only notice provided was an announcement of the hearing in the *Federal Register. See also United States v. Allegheny-Ludlum Steel,* 406 U.S. 742 (1972); *North Alabama Express, Inc. v. United States,* 585 F.2d 783 (5th Cir. 1978) (publication of notice of I.C.C. hearings in the *Federal Register* satisfies due process). In the context of regulatory proceedings such as these, notice by publication is a reasonable method of notifying interested parties and that is all that due process requires.

In the present case, however, petitioners argue that because the newspaper selected is not circulated throughout the entire twenty-five-mile radius area covered by the application, publication was therefore inadequate. But as the commission points out, there is no evidence of the circulation or nature of the *Rockingham County*

*Gazette* in the record. Nor is there any evidence that publication in any other newspaper would have given petitioners actual notice.

■ Even accepting petitioners' claim that the newspaper selected in which to publish the order of notice was not generally circulated throughout the entire area of proposed operations, the commission rightly points out that the authority *granted* the applicant was considerably less than what he requested. Instead, the applicant's common carrier certificate enables him to pick up vehicles only in the towns of Newfields, Stratham and Greenland while his contract authority is limited to emergency services rendered within a ten-mile area of his place of business, and that only in connection with the AAA agreement. This is precisely the area in which the petitioners concede that the circulation of the *Gazette* is most intense. Thus, we fail to perceive how petitioners have been prejudiced by this method of publication. *See Carter v. City of Nashua*, 113 N.H. 407, 308 A.2d 847 (1973); *Hardiman v. Town of Dover*, 111 N.H. 377, 284 A.2d 905 (1971).

■ Nor do we find merit in petitioners' other claim that the commission rules relative to notice are vague or ambiguous. The phrase "newspaper of general circulation" is widely used and generally understood. *See* Annot., 68 A.L.R. 542 (1930); 58 AM. JUR. 2d *Newspapers* § 7 (1971); 66 C.J.S., *Newspapers* § 4 (1950). Moreover, the phrase appears in the statutes and rules of many states, including New Hampshire. *E.g.*, RSA 91-A:2; RSA 541-A:3 I(a) (Supp. 1977).

Petitioners also argue that because the commission notified some tow operators by mail, but did not so notify others, the order should be set aside. Again, we cannot agree.

Commission rules provide for notification by mail "to the petitioner, to other parties of record, to parties required by statute to be notified and to such other additional persons as the Commission shall direct." N.H. PUBLIC UTILITIES COMMISSION, RULES OF PRACTICE AND PROCEDURE C.1.a (1974). Petitioners do not claim that the statute requires that they be notified. Rather, they claim only that in giving notice "to such other additional persons . . . ," the commission should have notified all carriers within the twenty-five-mile area or none at all.

■ We fail to see the logic in petitioners' argument. By giving written notice to the association and some seventeen other operators which it was not obliged to do, the commission simply made it possible for word of the hearing to spread to other, presumably interested, parties. Those petitioners who were notified had a common interest

with others who were not in opposing the application. Consequently, we cannot see, and petitioners have not demonstrated, how such limited notice could adversely affect those operators who did not receive such notice. We see no basis for their claim to be worse off than if the commission had failed to notify any tow operator by mail.

Finally, petitioners contend that the evidence was insufficient to support the commission's finding of public convenience and necessity under RSA 375-B:5 and :7 (Supp. 1977). This is an appeal pursuant to RSA 541:6, however, and in such proceedings we regard all findings of the commission as prima facie lawful. RSA 541:13. Moreover, its decision will not be set aside unless the court is satisfied by a clear preponderance of the evidence that the order is unjust or unreasonable. *Id.; see, e.g., Legislative Utility Consumers' Council v. Public Service Co.*, 119 N.H. 332, 402 A.2d 644 (1979).

There was evidence before the commission that the applicant is the only carrier in Newfields, that he is the only carrier used by the police department there, and that his services are also utilized by the police in Stratham and Greenland. Although there was evidence that the other two carriers appearing possess authority to pick up vehicles in these three towns, the commission could reasonably find that the applicant's location allows him to respond more rapidly when called, an important consideration in this type of service. Thus, the finding that the applicant is fit, willing, and able to perform the service is amply supported by the evidence.

The fact that granting the applicant this authority will create some competition is not a reason for denial. *See N.E. Household Moving & Storage, Inc. v. Public Util. Comm'n*, 117 N.H. 1038, 381 A.2d 745 (1977). The commission has broad discretion when weighing the wide variety of factors relevant to each case before it. *Vautier v. State*, 112 N.H. 193, 291 A.2d 612 (1972). Its decision in this case demonstrates that it considered the question of competition and concluded that any resulting rivalry would not be destructive but would advance the public interest. We cannot say, on the record now before us, that such a determination was unreasonable. In sum, the commission's grant of authority must be sustained.

*Appeal dismissed.*

All concurred.