Public Utilities Commission
No. 82-197

## APPEAL OF GRANITE STATE ELECTRIC COMPANY
## (New Hampshire Public Utilities Commission)

October 28, 1983

*Gregory H. Smith,* attorney general (*Peter C. Scott,* assistant attorney general, on the brief and orally), for the State.

*Orr & Reno P.A.,* of Concord (*Richard B. Couser & a.* on the brief, and *Mr. Couser* orally), for Granite State Electric Company.

BROCK, J.  In this appeal pursuant to RSA chapter 541, Granite State Electric Company (GSE) challenges a ruling by the New Hampshire Public Utilities Commission (PUC) disallowing a proposed surcharge in GSE's rates. For the reasons set forth below, we affirm the PUC's ruling and dismiss the appeal.

GSE is a public utility corporation, in the business of distributing and selling electric energy to customers in twenty-three New Hampshire cities and towns. In 1972, with the approval of the PUC, it incorporated a fuel adjustment clause (FAC) into its rate schedule in order to expedite its recovery of rapidly escalating costs of fuel that it used to generate electricity. Beginning in January 1972, the first month in which the clause was permitted, GSE adjusted the rates charged its customers each month in order to collect its estimated fuel expenses for that month. The estimate for each month was based exclusively on GSE's actual fuel expenses during an earlier month. The January 1972 FAC rate was based on expenses for December 1971. After 1975, the FAC rate for a given month was based on expenses incurred *two* months earlier (*e.g.,* the rate for January 1977 was based on expenses for November 1976).

Several other electric companies adopted an FAC in January 1972, but implemented it differently. Concord Electric Company (Concord) and Exeter and Hampton Electric Company (E&H) deferred collecting revenue under the clause until March 1972. The purpose of this "two-month lag" was to permit direct matching of each month's fuel expenses with revenue collected two months later, and consequently, to ensure that any shortfall in revenue would be directly reflected in the companies' balance sheets. The PUC's rules effectively guaranteed that this type of shortfall would eventually be collected, either in the form of higher rates or through some other method. Public Service Company of New Hampshire (PSNH) originally used a current accounting method, but changed in 1975 to a deferred accounting method which resulted in the two-month lag.

Under GSE's system it was difficult to keep track of the difference between fuel expenses and FAC revenues, but that system had two significant advantages over the lag system. First, GSE collected

revenue under the clause for two months when companies using the lag system collected nothing. Second, GSE's income statement was more realistic as a whole than that of the other three companies. While GSE's statement reflected its actual costs and revenues, the other companies carried uncollected fuel expenses on their books as "deferred income," thus artificially raising their apparent rate of return. The PUC found that this accounting difference produced significant benefits for GSE when GSE computed its actual rate of return for purposes of requesting a rate change from the PUC.

In 1980, the PUC ordered all four companies to convert to a new, "forward-looking," adjustment clause. Under the new clause, each company estimates its fuel costs for a succeeding three-month period and sets its rates accordingly. Any over-collections or under-collections during that period are adjusted through rate increases or decreases in subsequent quarters. The clause is intended to reduce the occurrence of wide fluctuations in electric rates, thus making it easier for customers to budget their electric power costs.

The new clause did not of itself permit Concord, E&H, and PSNH to collect the shortfall of revenue they had experienced under the two-month lag system. Accordingly, the PUC permitted all three companies to collect that shortfall by means of a temporary surcharge to be added to the new rates.

GSE, in its 1981 petition to the PUC, sought a similar surcharge to recover $408,000—the difference between its actual fuel expenses and its revenue under the FAC during 1980. The PUC denied the request, citing the above-mentioned advantages which GSE had enjoyed due to its not having used the two-month lag system. On rehearing, the PUC affirmed its decision, and this appeal followed.

■ We will not sustain such an appeal, except for errors of law, unless GSE demonstrates by a clear preponderance of the evidence that the PUC's decision was unjust or unreasonable or reflects an abuse of commission discretion. *Appeal of Ass'n of N.H. Utilities*, 122 N.H. 770, 772, 451 A.2d 164, 166 (1982); RSA 541:13.

GSE argues that it was discriminatory and an abuse of discretion for the PUC to allow other companies to recover their fuel cost shortfalls through a surcharge while denying GSE the same privilege. GSE stresses that the PUC has never disputed the reality of GSE's $408,000 shortfall in 1980. It argues, in essence, that the two-month lag and the differences in accounting procedures between GSE and the other three companies are relevant only insofar as they affected the actual *amount* of each company's shortfall. We disagree.

■■ This court has ruled that "allowance in some form must be made for increase in fuel costs shown to be inevitable." *Public Serv.*

*Co. v. State,* 113 N.H. 497, 502, 311 A.2d 513, 517 (1973). Such an allowance was made when GSE was permitted to adopt its fuel adjustment clause. Neither the statutes nor this court's decisions have imposed on the PUC a precise formula for the determination of rates. *See Legislative Util. Consumers' Council v. Public Util. Com.,* 117 N.H. 972, 974, 380 A.2d 1083, 1084 (1977). Rather, we have held that "[t]he commission has broad discretion when weighing the wide variety of factors relevant to each case before it." *O'Neil v. Public Util. Comm'n,* 119 N.H. 930, 935, 410 A.2d 244, 248 (1979). In this case, those factors included the benefits accruing from GSE's unique implementation of its FAC—no "deferred income" to artificially raise its rate of return, and two extra months of FAC collections resulting in an improved cash-flow position.

The PUC found that these benefits had sufficient impact (or *potential* impact) on GSE, *apart from* their effect on its fuel revenue shortfall, to compensate for GSE's failure to recover that shortfall. This finding is *prima facie* lawful and reasonable. RSA 541:13. Since neither party produced any quantitative evidence regarding that impact, GSE has failed to show that the PUC has abused its discretion or that its decision was discriminatory, and thus has failed to meet its burden of proof under the statute.

GSE further argues that it was unreasonable for the PUC to deny the surcharge and, at the same time, to accept a "normalizing adjustment" in the amount of $408,000 which GSE added to its test-year revenues in its rate filing with the PUC. GSE alleges that the only purpose of this adjustment was to prevent double recovery of its fuel shortfall, once through the surcharge and once through the new rates that would be based on the test-year revenues.

It is clear from the record before us, however, that the purpose of the adjustment was to bring fuel expenses and revenues for the test year into the same relationship as they would have in future years under the new forward-looking clause. Failure to make the adjustment would have produced higher rates for the future based in part on *past* under-collections of FAC revenues, while at the same time the new FAC provided for automatic recovery of *future* under-collections. This would lead first to recovery of past under-collections and then to double recovery of future fuel expenses. As the State points out in its brief, "the Commission would certainly have made the pro forma adjustment to remove the shortfall from the test year even if [GSE] had not done so." Since GSE had no absolute right to recover its shortfall, the PUC's reasons for denying the surcharge are equally applicable to its refusal to delete the adjustment.

*Appeal dismissed.*

SOUTER, J., did not sit; the others concurred.