Public Utilities Commission
No. 81-481
No. 82-001
No. 82-006

## APPEAL OF THE ASSOCIATION OF NEW HAMPSHIRE UTILITIES

## APPEAL OF GAS SERVICE, INC.
### (New Hampshire Public Utilities Commission)

September 3, 1982

*Ransmeier & Spellman*, of Concord (*Dom S. D'Ambruoso* on the brief and orally), for the Association of New Hampshire Utilities.

*Orr & Reno P.A.*, of Concord (*Charles H. Toll, Jr.*, and *Thomas C. Platt, III*, on the brief, and *Mr. Platt* orally), for Gas Service, Inc.

*New England Legal Foundation*, of Boston, Massachusetts (*Marcia Drake Seeler* on the brief), by brief for the Business and Industry Association of New Hampshire, as amicus curiae.

*Gregory H. Smith*, attorney general (*Ronald F. Rodgers*, attorney, on the brief and orally), for the State.

DOUGLAS, J.   The issue in this case is whether the public utilities commission (PUC) may assess public utilities for the "allowable expenses" of the Governor's Council on Energy (GCOE). We hold that the PUC may not recover these expenses.

RSA 363-A:1 (Supp. 1981) provides that the "public utilities commission shall annually . . . ascertain the total of its expenses during such year incurred in the performance of its duties relating to public utilities . . . and relating to the allowable expenses for the council on energy." The PUC then assesses these expenses against the public utilities in such proportion as the PUC determines to be "fair and equitable." *See* RSA 363-A:2 (Supp. 1981). Legislation enacted in 1981 specifically provides that "funding for administrative expense for the council on energy shall be a charge against the utilities assessment fund as administered by the public utilities commission." Laws 1981, 568:118 II. After the PUC calculates the amount to be assessed against each public utility, it certifies this list to the State treasurer who bills the utilities. *See* RSA 363-A:3 (Supp. 1981).

In 1981, the PUC prepared its list of utility tax assessments for the fiscal year ending June 30, 1982, and sent it to the State treasurer, who commenced collections. The plaintiff public utilities were assessed for $304,404 of GCOE "expenses" on July 2, 1981. One of the plaintiff utilities, Gas Service, Inc., was assessed $27,543 for assistance provided to it by the GCOE during January 1981, when it experienced temporary gas supply problems. The GCOE assisted Gas Service, Inc., by helping it to obtain waivers of truck weight limits so that larger trucks could be used to haul propane to its terminal.

The plaintiffs filed an objection to the assessment, challenging

the portion relating to GCOE expenses. The PUC conducted a hearing, reduced the allowable GCOE expenses to $303,098 and denied the plaintiffs' motions for rehearing. The cases before us question the constitutionality of the statute and the PUC's application of it.

We will not set aside a PUC order, except for errors of law, unless the plaintiffs demonstrate by a clear preponderance of the evidence that such order is unjust or unreasonable or reflects an abuse of commission discretion. *Appeal of Gas Service, Inc.*, 121 N.H. 797, 799, 435 A.2d 126, 128 (1981); *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 340, 402 A.2d 626, 632 (1979).

■ The justices of this court have characterized the utility assessment fee authorized by RSA 363-A:1 (Supp. 1981) as "a mere *license fee* having as its foundation the cost of *regulating* the utilities involved." *Opinion of the Justices*, 101 N.H. 549, 556, 137 A.2d 726, 731 (1958) (emphasis added). The plaintiffs suggest that as a result of the 1981 amendment to RSA 363-A:1 (Supp. 1981) the utility assessment may have lost its character as a "license fee" and become a "tax." We refuse to characterize the assessment as a tax: the 1981 amendment did not alter the statute so drastically as to change its nature and purpose.

■■ Whether the "license fee" imposed on public utilities for GCOE expenses is permissible depends upon the type of license fee which is involved. This court has allowed license fees to be imposed in three different situations. First, such a fee may be imposed as the cost of regulating the type of private enterprise "which presents a social problem properly coming under the exercise and jurisdiction of the police power of the State and which requires strict regulation and supervision." *See Opinion of the Justices*, 116 N.H. 351, 355, 358 A.2d 667, 670 (1976) (legalized gambling). Public utilities do not fit into this category. This court has also sanctioned imposition of a "special cost assessment" on an entity which requires special services or which takes advantage of such services. *Opinion of the Justices*, 117 N.H. 382, 384, 373 A.2d 640, 641 (1977). Public utilities have not "necessitated the services" of the GCOE. Rather, that body was established "to use the management, scientific, and technological talents in both private and public sectors of the state to develop energy proposals and programs," to advise the Governor on these programs, and on their implementation. EXEC. ORDER NO. 73-12 (1972).

The third category of license fee is that imposed for inspection and regulation of the business licensed. "To be valid charges made

as license fees must bear a relation to and approximate the expense of issuing the licenses and of inspecting and regulating the business licensed . . . [s]uch fees . . . must be incidental to *regulation* and not primarily for the purpose of producing revenue." *Laconia v. Gordon*, 107 N.H. 209, 211, 219 A.2d 701, 703 (1966) (emphasis added and citation omitted); *see Opinion of the Justices*, 98 N.H. 527, 529, 96 A.2d 733, 734 (1953). In the parties' October 5, 1981, stipulation of facts, the GCOE agreed that it "has no state statutory authority to directly regulate public utilities." The parties, however, stated that they "disagree as to the effect, if any, of the activities of the GCOE on the performance of the regulatory functions of the PUC," and that they disagree "as to the relevance of the GCOE's actual participation in or contribution to the regulatory functions of the PUC." The plaintiffs contend that the GCOE lacks regulatory authority and that any charges assessed against them are improper. The PUC, on the other hand, argues that the GCOE's functions are regulatory.

■■ The executive order establishing the GCOE indicates that the agency's function is to advise the Governor about the development and implementation of energy proposals and programs. The list of GCOE activities included in the parties' October 5, 1981, stipulation of facts illustrates that most of the GCOE's efforts have been directed towards the conservation of natural resources and the development of alternative sources of energy such as wood, hydroelectric, and solar. After examining the theoretical purposes and actual functions of the GCOE, we conclude that the agency's impact on public utilities is too indirect to constitute "regulation." In contrast, the PUC's broad, yet well-defined, supervisory powers over public utilities rise to the level of "regulation" of a business. *See Cloutier v. State Milk Control Board*, 92 N.H. 199, 205–06, 28 A.2d 554, 558–59 (1942). Because the GCOE does not license or regulate public utilities, the assessment imposed upon the utilities was improper.

*Reversed and remanded.*

All concurred.