Public Utilities Commission
No. 82-125
No. 82-126

APPEAL OF BEVERLY HOLLINGWORTH AND ROBERTA PEVEAR

APPEAL OF THE NEW HAMPSHIRE CIVIL DEFENSE AGENCY
(New Hampshire Public Utilities Commission)

December 10, 1982

*Shaheen, Cappiello, Stein & Gordon,* of Concord (*Robert A. Stein* on the brief and orally), for Beverly Hollingworth and Roberta Pevear.

*Gregory H. Smith,* attorney general (*Peter C. Scott,* assistant attorney general, on the brief and orally), for the New Hampshire Civil Defense Agency.

*Sulloway, Hollis & Soden,* of Concord (*Margaret H. Nelson* on the brief and orally), for Public Service Company of New Hampshire.

DOUGLAS, J. These cases present the question whether the chairman of the New Hampshire Public Utilities Commission (PUC) acted properly in approving certain requests for assessment of costs, pursuant to RSA chapter 107-B (Supp. 1981), in connection with the preparation of a nuclear emergency evacuation plan for the Seacoast area surrounding the site of the Seabrook nuclear power plant. We affirm.

Beverly Hollingworth and Roberta Pevear, State representatives from Hampton and Hampton Falls, respectively, brought this appeal challenging assessments made by PUC Chairman Michael Love for the cost of preparing an emergency evacuation plan for fifteen New Hampshire and seven Massachusetts communities within a ten-mile radius of Seabrook Station, which is currently under construction. The preparation of an evacuation plan in anticipation of a potential nuclear emergency is a prerequisite to the issuance of an operating license for the Seabrook plant by the United States Nuclear Regulatory Commission. In order to develop an emergency preparedness plan that would comply with federal regulations, and "in order to protect the health and welfare of the citizens of this state, particularly those in close proximity to" the

Seabrook plant, Laws 1981, 549:1, the legislature enacted RSA chapter 107-B (Supp. 1981). This legislation vests authority in the New Hampshire Civil Defense Agency (CDA), "in cooperation with affected local units of government," to formulate such a plan, and authorizes the chairman of the PUC to assess the costs incurred to the electric utilities that will operate the nuclear plant, in this case Public Service Company of New Hampshire (PSNH). RSA 107-B:1, I (Supp. 1981).

On October 20, 1981, the CDA entered into a contract with the engineering firm of Costello, Lomasney, de Napoli, Inc., of Manchester, requiring the firm to develop a nuclear emergency evacuation plan for the Seacoast communities surrounding the Seabrook plant. No public hearings were held prior to execution of the agreement, and officials of the affected towns were not involved in the selection and hiring of the engineering firm or in determining the scope of the evacuation plan itself. The CDA subsequently requested and received approval of the contract from the Governor and Executive Council. In addition, the Governor and Council, also at the CDA's behest, established a budget for the receipt and disbursement of $679,000 to Costello, Lomasney, de Napoli, Inc., to fund the contract. This sum was to be raised by fees assessed against PSNH pursuant to RSA chapter 107-B (Supp. 1981).

In November 1981, the PUC chairman conducted three days of hearings on the CDA's requested assessment of $772,635: $679,000 in engineering fees; $24,635 charged by the Massachusetts Civil Defense Agency for evacuation planning in Massachusetts communities within the ten-mile evacuation area; and $69,000 in New Hampshire CDA expenses. Among those testifying at the hearings were Representatives Hollingworth and Pevear, who argued that the chairman should not recognize the requested assessments because they were made without a reasonable opportunity for public comment on the factors to be addressed during the formulation of the evacuation plan.

On January 5, 1982, the chairman approved in full the $679,000 assessment to pay Costello, Lomasney, de Napoli, Inc., but only $5,000 and $19,600 for the Massachusetts and New Hampshire Civil Defense Agencies, respectively. The chairman determined that the balances of the requested assessments were attributable to personnel expenses related to overseeing the formulation of the evacuation plan, and that such costs could only be assessed after public comment, pursuant to RSA 107-B:2 (Supp. 1981).

Regarding Representatives Hollingworth and Pevear's challenge to the $679,000 requested assessment, the chairman determined that his role in approving assessments under RSA 107-B:1, I (Supp.

1981) was simply as, what he described as, a "launderer of the money," and that he had no authority under RSA 107-B:1, I (Supp. 1981) to examine the amount of the CDA's request. On February 18, 1982, chairman Love denied the motions for a rehearing filed by Representatives Hollingworth and Pevear and by the CDA.

Representatives Hollingworth and Pevear appealed to this court, contending that the PUC chairman misinterpreted the scope of his authority under RSA chapter 107-B (Supp. 1981) when he approved assessments for the funding of a nuclear emergency evacuation plan without permitting the statutorily mandated public comment on and participation in the formulation of that plan. The CDA's appeal alleges that the chairman erred as a matter of law in ruling that its personnel expenses were not a "cost of preparing the plan" within the meaning of RSA 107-B:1, I (Supp. 1981).

■ Both of these cases were brought before this court pursuant to RSA 541:6. RSA chapter 541 provides for appeals in certain cases "[w]hen so authorized by law." RSA 541:2; *see N.E. Household Moving & Storage, Inc. v. Public Util. Comm'n,* 117 N.H. 1038, 1040, 381 A.2d 745, 747 (1977); *Connell's New & Used Cars, Inc. v. State,* 117 N.H. 531, 532, 375 A.2d 257, 257 (1977). Nothing in RSA chapter 107-B (Supp. 1981), however, specifically authorizes an appeal from the PUC chairman's assessment of costs.

■ Representatives Hollingworth and Pevear and the CDA predicate their appeals on RSA 365:21, but that statute governs appeals from decisions of the full commission, not those of the commission's chairman alone. If this assessment had been made by the PUC as a body pursuant to RSA chapter 363-A, judicial review could be sought by appeal. *See Appeal of the Association of New Hampshire Utilities,* 122 N.H. 770, 772, 451 A.2d 164, 166 (1982).

■ Our practice in the past, however, has been to consider an improper chapter 541 petition as a petition for a writ of certiorari, and we will follow this practice in these cases. *Connell's New & Used Cars, Inc. v. State,* 117 N.H. at 532, 375 A.2d at 258. Therefore, our standard of review is whether the PUC chairman acted illegally in respect to jurisdiction, authority, or observance of law, or whether he abused his discretion or acted arbitrarily, unreasonably, or capriciously. *State v. Brackett,* 122 N.H. 716, 718, 449 A.2d 1210, 1212 (1982); *Wilson v. State Personnel Comm'n,* 118 N.H. 424, 426, 387 A.2d 1160, 1161 (1978).

The argument advanced by Representatives Hollingworth and Pevear before the PUC and on review by this court is that the power of the chairman to "assess" the cost of preparing a nuclear

evacuation plan within the meaning of RSA 107-B:1, I (Supp. 1981) should be read expansively to permit him independently to investigate the basis for any assessment requested by the CDA. Accordingly, Representatives Hollingworth and Pevear assert that the chairman should have found that the CDA violated the legislature's intent and did not act "in cooperation with affected local units" when it entered into the contract with Costello, Lomasney, de Napoli, Inc., without consulting officials of the municipalities within the ten-mile nuclear evacuation area. Additionally, they argue that the PUC chairman had authority under RSA chapter 365:19 to conduct his own investigation into the basis for the requested assessment.

In his written findings and conclusions, the chairman determined that the legislature had entrusted the CDA with the task of preparing and implementing an emergency evacuation plan in the Seabrook area. Noting that the CDA's recommendation to award the contract to Costello, Lomasney, de Napoli, Inc., was approved by the attorney general's office and by the Governor and Executive Council, the chairman concluded that "[t]here is no grant of Legislative power to me . . . to overturn the decision of . . . [these authorities] on such matters."

■■ We agree with the chairman's interpretation of his limited role under RSA chapter 107-B (Supp. 1981). The delegation of legislative authority to the chairman in that statute is extremely narrow and almost ministerial in nature. Under RSA 107-B:1, I (Supp. 1981), the only independent evaluation of requested assessments that the PUC chairman is authorized to make is whether the cost is one of "preparing the plan and providing equipment and materials necessary to implement it." The chairman made this evaluation and disallowed those charges relating to the CDA's personnel expenses for overseeing the formulation of the evacuation plan. Once the chairman authorized the assessment, his only remaining function was to assess the cost proportionately among all utilities that have applied for an operating license for the Seabrook plant. *See* RSA 107-B:3 (Supp. 1981).

■ The legislative history of RSA chapter 107-B (Supp. 1981), which Representatives Hollingworth and Pevear originally co-sponsored before it was substantially altered, supports a restrictive interpretation of the PUC chairman's powers. RSA 107-B:1, I (Supp. 1981), as amended in committee, provided that "[t]he chairman of the public utilities commission *may* assess a fee . . . for the cost of preparing the plan and providing equipment and materials to implement it." (Emphasis added.) The legislation was then amended

on the House floor to change "may" to "shall." *See* N.H.H.R. JOUR. 376–78 (1981). "Absent an indication of legislative intent to the contrary, the word 'shall' acts as a command." *Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691, 433 A.2d 1291, 1295 (1981); *see Appeal of Peirce and Rice*, 122 N.H. 762, 765, 451 A.2d 363, 365 (1982).

Consequently, whatever independent authority the PUC chairman may have had under previous versions of the bill was eliminated in the present version. Representatives Hollingworth and Pevear, who dissociated themselves from the legislation as amended, *see* N.H.S. JOUR. 928 (1981), cannot prevail in their attempt to broaden the chairman's powers beyond the limits imposed by the current version of RSA chapter 107-B (Supp. 1981).

Similarly, there is no indication in the statute or its legislative history that the authority granted to the full commission to conduct investigations under RSA 365:19 vests authority in the PUC chairman to investigate independently the basis for assessments that are requested by the CDA. The delegation of authority to the chairman contained in RSA chapter 107-B (Supp. 1981) is quite specific and narrow, and in the absence of some express authorization by the legislature to incorporate the powers of RSA chapter 365, we will not interpret the chairman's powers beyond those granted on the face of the statute.

After reviewing Representatives Hollingworth and Pevear's contentions, we conclude that the chairman did not act illegally, arbitrarily, or unreasonably, nor did he abuse his discretion in approving the asessment of $679,000 to pay Costello, Lomasney, de Napoli, Inc., for preparing a nuclear emergency evacuation plan for the ten-mile area surrounding the site of Seabrook Station.

We also affirm the chairman's decision not to approve certain personnel expenses incurred by the Massachusetts and New Hampshire Civil Defense Agencies because they were not properly considered a cost of preparing an evacuation plan. Although the chairman recognized $19,600 of the expenses of the New Hampshire CDA as being associated with equipment or material to implement the plan, RSA 107-B:1, I (Supp. 1981) authorizes him within the limited scope of his power to withhold approval of requested assessments for costs not related to preparation of the plan. Consequently, the PUC chairman determined that the personnel expenses could only be assessed pursuant to RSA 107-B:2 (Supp. 1981).

Unless the PUC chairman is allowed to exercise this limited discretion to review requested assessments, electric utilities, and

ultimately their customers, will be burdened with having to pay expenses incurred by the CDA that are not related to the preparation of an emergency evacuation plan. Such assessments are not meant to be an open-ended funding source for CDA personnel; otherwise, they could violate our decision in *Appeal of the Association of New Hampshire Utilities*, 122 N.H. at 772, 451 A.2d at 166. Therefore, we cannot say that chairman Love acted improperly in refusing to assess utilities for the personnel expenses of overseeing the formulation of the evacuation plan pursuant to RSA 107-B:1, I (Supp. 1981).

*Affirmed.*

All concurred.