State Board of Education
No. 82-024

## PETITION OF MILAN SCHOOL DISTRICT
### (New Hampshire State Board of Education)

March 31, 1983

*Nighswander, Martin, KillKelley & Kidder P.A.*, of Laconia (*Bradley F. Kidder* and *James L. Burke* on the brief, and *Mr. Kidder* orally), for the Milan School District.

*New Hampshire Legal Assistance*, of Concord (*John D. MacIntosh, Margaret L. Popkin*, and *Carol J. Young* on the brief, and *Mr. MacIntosh* orally), for Christine L., by and through her mother and next friend, Shirley L.

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Gerald M. Zelin* on the brief), by brief for the Salem School District, as amicus curiae.

*Ronald K. Lospennato*, and *M. Elaine Beauchesne*, of Concord, and *Frank Laski*, of Philadelphia, Pennsylvania, by brief for the Developmental Disabilities Advocacy Center, Inc., the Association for the Severely Handicapped, Region X of the American Association on Mental Deficiency, and the New Hampshire Association for Retarded Citizens, as amici curiae.

BATCHELDER, J.   This is a petition for a writ of certiorari from a decision by the State Board of Education requiring the Milan School District to provide special education and related services to a mentally and physically handicapped child. For the reasons set forth below, we dismiss the petition.

The record indicates that Christine L. is profoundly mentally retarded (*i.e.*, having a developmental level of zero to twelve months) and suffers from cerebral palsy which limits her motor ability. Christine lives with her mother within the Milan School District. The school district has provided various educational programs to Christine since she was seven.

In January 1981, the school district, by letter, advised Christine's mother that it would not continue to provide such educational services beyond the end of that school year because it had determined that the child, then fifteen years old, was "not educationally handi-

capped and cannot benefit from an educational placement." The letter stated that the school district's decision was based on a report prepared by Patricia Andrews, M.D., a specialist in child development, and on the findings of the Milan Pupil Placement Team. The placement team is a group of people responsible for referral, identification, and evaluation of educationally handicapped students, and for the development and monitoring of individual education programs for such children. *See New Hampshire Standards for the Education of Handicapped Students*, ED § 1101.04. Placement team reports must be prepared after a handicapped child's initial evaluation and at least once every three years thereafter. ED § 1107.06. Copies of Dr. Andrews' report and findings of the placement team were enclosed with the school district's letter. The notice, as required by law, also informed Mrs. L. of Christine's rights to due process review and further evaluation. ED § 1107.86.

Mrs. L., as mother and next friend of Christine, appealed the school district's decision. In September 1981, hearings were held before Newell J. Paire, appointed by the State Board of Education as an impartial hearing examiner. *See* ED §§ 1127.01, 1127.02. On October 21, 1981, the examiner determined that Christine was so severely handicapped that she was not entitled to special education. The examiner's decision was appealed to the State Board of Education. *See* ED § 1127.03. The parties submitted a stipulated record and legal memoranda, and the board heard oral arguments in the matter.

Because the school district had denied Christine educational services, the board issued a preliminary order mandating that the school district provide such services pending all appeals, as required by State and federal law. *See* ED § 1127.02(k); 34 C.F.R. § 300.513 (1982). On January 11, 1982, the board issued a report finding that Christine could benefit from special education, rescinded the ruling of the hearing examiner, and ordered the school district to provide educational services and to develop an appropriate individual education plan (IEP) for Christine. It is from this ruling that the school district seeks relief by its petition for a writ of certiorari.

The school district contends that it is not required by the State's special education law, RSA ch. 186-C (Supp. 1981), to provide special educational services to a child who is profoundly retarded and has allegedly shown no change in her developmental level during the past seven years. The Salem School District submitted an amicus brief in support of Milan School District's position, and several groups representing the developmentally disabled briefed the application of State and federal law regarding education of handicapped children.

Before we can reach the merits of this petition, it is necessary to review the context of federal and State law from which it arises.

I. *The Education for All Handicapped Children Act and New Hampshire's Special Education Law*

During the past decade, there has been a burgeoning recognition of the needs of the handicapped and of their rights to education and services, which has been reflected in federal and State law. *See, e.g., Board of Education v. Rowley,* 102 S. Ct. 3037 (1982); *Garrity v. Gallen,* 522 F. Supp. 171 (1981); *Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania,* 343 F. Supp. 279 (E.D. Pa. 1972); *see also* SENATE COMM. ON LABOR & PUBLIC WELFARE, EDUCATION FOR ALL HANDICAPPED CHILDREN ACT OF 1975, S. REP. NO. 168, 94th Cong., 1st Sess., *reprinted in* 1975 U.S. CODE CONG. & AD. NEWS 1425.

The law governing the educational rights of handicapped children has been referred to as a "hybrid," comprised of elements of both federal and State law. *Garrity v. Gallen,* 522 F. Supp. at 221. The most significant law in this area is the Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401–1461 (1976) (EHCA), which represents an ambitious federal effort to promote the education of handicapped children who previously had been excluded from receiving adequate education.

EHCA provides federal money to the States to assist in the education of handicapped children. A State's receipt of funding is conditioned upon compliance with extensive procedures set forth in EHCA and with regulations promulgated by the United States Department of Education. See 20 U.S.C. §§ 1412, 1413, 1416 (1976); 34 C.F.R. §§ 300.110, 300.111 (1982). New Hampshire receives over 3.5 million dollars in federal funds, and, consequently, is bound by the federal guidelines.

Under these laws, in order to qualify for funding, a State must demonstrate that it "has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1) (1976). A "free appropriate public education" is designed to meet the unique needs of the handicapped child by means of an individualized educational program (IEP) developed through a consultative process involving the local education agency, the teacher, and the parents. 20 U.S.C. § 1401(18), (19) (1976); *see Board of Education v. Rowley,* 102 S. Ct. at 3038; *see also* RSA 186-C:2, III (Supp. 1981) (defining "individualized education plan").

EHCA also requires the States to provide extensive procedural due process safeguards, which are designed to assure that handicapped children or their parents can enforce the rights guaranteed

by federal law. 20 U.S.C. § 1415 (1976); *see Board of Education v. Rowley,* 102 S. Ct. at 3050–52; *see generally* Note, *Enforcing the Right to an "Appropriate" Education: The Education of All Handicapped Children Act of 1975,* 92 HARV. L. REV. 1102, 1111–12 (1979). Under these procedures, the parent of a handicapped child must be notified of any proposed change in the child's IEP or placement, and must be permitted to bring a complaint about "any matter" relating to the child's education. 20 U.S.C. § 1415(b)(1)(C), (D), (E) (1976). An "impartial due process hearing" must be held concerning that complaint, and there must be a procedure providing for an appeal to the State educational agency. 20 U.S.C. § 1415(b)(2), (c) (1976). If there is still dissatisfaction with the decision of the State agency on appeal, EHCA provides that "[a]ny party aggrieved" has "the right to bring a civil action with respect to the complaint . . . in any State court of competent jurisdiction or in a district court of the United States . . . ." 20 U.S.C. § 1415(e)(2) (1976). EHCA provides that a reviewing court "shall receive the record of the administrative proceedings, *shall hear additional evidence* at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2) (1976) (emphasis added).

The State version of EHCA, RSA chapter 186-C (Supp. 1981), declares: "[I]t is the purpose of this chapter to insure that the state board of education and the school districts of the state provide a free and appropriate public education for educationally handicapped children." RSA 186-C:1 (Supp. 1981). In other words, RSA chapter 186-C (Supp. 1981) represents New Hampshire's efforts to ensure compliance with the federal law. *Garrity v. Gallen,* 522 F. Supp. at 221.

Under State law, children between the ages of three and twenty-one who have been determined by the local school district to be "educationally handicapped" are entitled to attend approved programs which can implement their IEP's. RSA 186-C:9 (Supp. 1981). RSA 186-C:16, IV (Supp. 1981) requires the State Board of Education to adopt rules for hearing the appeals of school district decisions regarding IEP's. Pursuant to this statutory mandate and EHCA, the board adopted elaborate review procedures based upon the federal requirements that an impartial hearing examiner review the decision of the local educational agency, and that an appeal of the hearing examiner's decision to the State Board of Education be guaranteed as a matter of right. *See* ED chs. 1125 & 1127. It is important to note that State law is silent as to how review of the State board's decision in these matters may be obtained.

## II. *Review by Petition for Writ of Certiorari Is Inappropriate*

This case is before us on a petition for a writ of certiorari from the order of the board of education requiring the school district to provide special education to Christine. Because New Hampshire receives federal funding pursuant to EHCA, the subject matter of this case is governed by EHCA as well as by RSA chapter 186-C (Supp. 1981). The review process preceding this petition was consistent with the federal due process mandate of EHCA and with the department of education's regulations.

EHCA provides, however, that any party aggrieved by a decision of the State educational agency shall have the right to bring a civil action with respect to any complaint in any State court of competent jurisdiction or in federal district court, which is able to hear additional evidence. 20 U.S.C. § 1415(e)(2) (1976). Consequently, the school district could have sought review of the board's decision by instituting such a civil action in State superior court or in the United States District Court, but instead it erroneously sought a petition for a writ of certiorari in this court.

■■ The standard of review is narrow for a case which comes before us on a petition for writ of certiorari: whether the agency or official acted illegally in respect to jurisdiction, authority, or observance of law, or whether it abused its discretion or acted arbitrarily, unreasonably, or capriciously. *See Appeal of Hollingworth*, 122 N.H. 1028, 1032, 453 A.2d 1288, 1290 (1982). This standard of review necessarily precludes the consideration of additional evidence which the school district had a right to present under federal law.

In oral argument and in its reply brief, the school district argues that federal law *requires* that the appeal from the decision of a State educational agency be in the form of a *de novo* review, and requests that the narrow scope of review by petition for a writ of certiorari not be applied. Furthermore, the school district requests that this court constitute the forum for such *de novo* review.

■ At the outset, we note that the United States Supreme Court's holding in *Rowley* indicates that court review pursuant to EHCA is not *de novo* in nature because the court receives the records of the administrative proceedings, and the evidence it receives is additional. *Board of Education v. Rowley*, 102 S. Ct. 3050–51.

■■ We hold that judicial review by means of a petition for a writ of certiorari to this court is inappropriate in this case, because applicable federal law provides that any party aggrieved by the findings and decisions of the State educational agency has the right

to bring a civil action in a court where additional evidence may be presented; specifically, a State trial court or a federal district court. 20 U.S.C. § 1415(e)(2) (1976). An appellate court, such as ours, is not an appropriate forum for review of a complaint based on EHCA. We agree with the United States Supreme Court that "the importance Congress attached to these procedural safeguards cannot be gainsaid." *Board of Education v. Rowley*, 102 S. Ct. at 3050. Accordingly, we find that the procedural requirements of EHCA cannot be satisfied by this court, and we dismiss the petition for writ of certiorari so that the school district may bring an action in State superior court or the United States District Court for the District of New Hampshire.

■ We caution that if the school district initiates a proceeding in State superior court, this would not be "an invitation to the [court] to substitute [its] own notions of sound educational policy" for those of the board of education. *Board of Education v. Rowley*, 102 S. Ct. at 3051. However, we agree with the First Circuit Court of Appeals that for judicial review under EHCA to have any meaning "the courts must be free to construe the term 'educational' so as to insure, at least, that the state [policy] provides the hope of educational benefit." *Abrahamson v. Hershman*, 701 F.2d 223, 231 (1st Cir. 1983).

*Dismissed.*

All concurred.