Original
No. 82-163

## Petition of Darlene W.

December 12, 1983

*New Hampshire Legal Assistance*, of Portsmouth (*Naomi Karp* and *John MacIntosh* on the brief, and *Ms. Karp* orally), for Darlene W., by and through her mother and next friend, Linda W.

*Casassa, Mulherrin & Ryan*, of Hampton (*Peter J. Saari* on the brief and orally), for the Hampton School District.

BROCK, J.   This is a petition for a writ of certiorari to review a decision of the State Board of Education (board). The board refused to impose liability on the Hampton School District (Hampton) for certain educational expenses of Darlene W., an educationally handicapped child. The expenses at issue were incurred during a four-month period in 1981, while an appeal was pending (both before the board and earlier before a hearing officer) regarding Darlene's placement in a public or private school setting. For the reasons set forth below, we dismiss the petition.

Darlene W., who was fourteen years old when this petition was submitted in April 1982, has been identified under State and federal special education laws as a handicapped child with a severe learning disability coupled with a speech and language disorder. She has resided in the Hampton School District since 1979. Since 1978, she has attended the Landmark School (Landmark), a specialized private school for learning disabled children in Manchester, Massachusetts.

During the academic years 1979–80 and 1980–81, the Hampton School District paid for Darlene's education at Landmark. This was required, in the absence of an adequate public school program, by the federal Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401–1461 (1982) (EHCA), by corresponding federal regulations, 34 C.F.R. §§ 300–399 (1983), and by the State statute designed to implement the EHCA, RSA chapter 186-C (Supp. 1981). Both the federal and the State statutes encourage local school districts to provide their own special education programs. If a district can "provide satisfactory assurance" that its programs meet the EHCA's standards for "free appropriate public education" of handicapped children, it will only be liable for costs resulting from placement of handicapped children in its own public programs, and not for costs incurred in private placements. 20 U.S.C. § 1414 (1982).

To enforce the rights guaranteed by the statutes, State and federal regulations have created an extensive system of notice requirements and procedures for the hearing of disputes between handicapped children (or their parents) and educational agencies.

20 U.S.C. § 1415 (1982); 34 C.F.R. §§ 300.500–300.653 (1983); *New Hampshire Standards for the Education of Handicapped Students*, ED chs. 1125, 1127. In this case, these procedural safeguards first came into play in the summer of 1980, when Hampton created an individualized education plan (IEP) for Darlene, using public resources.

Darlene's mother (the petitioner) challenged the adequacy of the plan, and the dispute was referred to a hearing officer, who issued a decision on November 20, 1980. That decision stated that "to change the child to the district program *at this point in time*, would work to her disadvantage emotionally as well as educationally" (emphasis in original), and that "[t]he parent and staff of the private school should actively work toward their stated goal of preparing the child . . . for transfer to the public school setting." Hampton did not appeal the decision and continued to pay Darlene's expenses at Landmark.

In the summer of 1981, Hampton produced a similar IEP for Darlene, and again Darlene's mother challenged the plan. The same hearing officer was assigned to the case, and on October 29, 1981, he ruled in Hampton's favor, stating that the public program was "free and appropriate" and that Hampton would no longer be obliged to pay for Darlene's education at Landmark or any other private facility. He also ruled that Hampton would not be liable for the cost of Darlene's education at Landmark *during the appeal process* (the period beginning in September 1981 and ending with the board's decision on December 14) since Hampton had produced its IEP "in a timely fashion" and had not approved Darlene's placement at Landmark for the 1981–82 academic year.

Darlene's mother appealed the hearing officer's decision to the board in accordance with the applicable statutes and regulations. The board first (on December 14, 1981) affirmed the decision on Darlene's placement, and later (on March 9, 1982) affirmed the decision on liability for costs during the appeal process. Darlene's mother then filed this petition, challenging only the latter part of the board's ruling and basing her argument on certain language in 20 U.S.C. § 1415(e)(3) (1982).

That filing, however, was inconsistent with the scheme laid out in 20 U.S.C. § 1415(e)(2) (1982), which provides that any party aggrieved by a decision of the board involving programs covered by the EHCA may appeal that decision to a State trial court or a federal district court. In *Petition of Milan School District*, 123 N.H. 227, 459 A.2d 270 (1983), we held that "[a]n appellate court, such as ours, is not an appropriate forum for review of a complaint based on

EHCA." *Id.* at 233, 459 A.2d at 274. The procedural requirements contained in 20 U.S.C. § 1415 "cannot be satisfied by this court." *Id.* Section 1415 sets forth a broad standard of review: "The court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (1982).

■■ By contrast, "[t]he standard of review is narrow for a case which comes before us on a petition for writ of certiorari: whether the agency or official acted illegally in respect to jurisdiction, authority, or observance of law, or whether it abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Milan School District, supra* at 232, 459 A.2d at 274. This standard would necessarily preclude the sort of review envisioned by the statute.

■■ More important, certiorari is an extraordinary remedy. It "is granted sparingly and only when the substantial ends of justice require such action, and ordinarily not when other procedures are available." *Gallo v. Century Broadcasting*, 114 N.H. 810, 812, 330 A.2d 780, 781 (1974). When this court has granted certiorari from decisions of the board of education, it has been because those decisions were otherwise insulated from judicial review. *See, e.g., Petition of Gorham School Board*, 121 N.H. 878, 436 A.2d 74 (1981). In this instance, however, the EHCA "has provided ample relief" in the context of "a well-ordered and well-articulated scheme considered necessary in the review of" all decisions involving EHCA funds. *See Nashua v. Public Utilities Commission*, 101 N.H. 503, 506–07, 148 A.2d 277, 279–80 (1959).

■ The petitioner's argument that granting this petition would further judicial economy is without merit. "The rationale is clear that for this court to rule prior to the exhaustion of appeal remedies can result in additional trials and appeals which rather than expedite inexpensively may delay expensively." *Exeter & Hampton Electric Co. v. Public Utilities Commission*, 108 N.H. 358, 360, 236 A.2d 486, 488 (1967).

■ We therefore dismiss the petition for writ of certiorari so that petitioner may proceed in the superior court or in the United States District Court for the District of New Hampshire.

*Petition dismissed.*

SOUTER, J., did not sit; the others concurred.