U.S. District Court
No. 84-185

JOHN H. *& a.*

v.

ROBERT BRUNELLE *& a.*

August 5, 1985

*Burns, Bryant, Hinchey, Cox & Shea P.A.*, of Dover (*Anthony A. McManus* on the brief and orally), for the plaintiffs.

*Gregory H. Smith*, attorney general (*Leslie J. Ludtke*, assistant attorney general, on the brief and orally), for the State.

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Gerald M. Zelin* on the brief and orally), for the Timberlane Regional School District.

KING, C.J. This case concerns two questions certified to this court by the United States District Court for the District of New Hampshire (*Loughlin*, J.). The questions certified for our consideration are: (1) "Has the State waived its right to assert sovereign immunity to any claims of financial responsibility for funding the non-public educational placement of disabled children by the adoption of P.L. 94–142 [20 U.S.C. §§ 1401–1461] and RSA 186-A, now 186-C"; and (2) "Does RSA 186-A, now 186-C, constitute a waiver of the State's eleventh amendment immunity from a suit in Federal court?"

We will answer these certified questions in the context in which they arose in the action currently pending before the federal district court. In that action, the parents of an educationally handicapped child are suing a number of defendants, including Robert Brunelle (Commissioner of Education for the State of New Hampshire), the State Department of Education, the State Board of Education, the State of New Hampshire, and the Timberlane Regional School District. The parents are requesting reimbursement for the cost of maintaining their child in a private residential school for handicapped children. We will therefore consider whether the State has waived sovereign immunity and eleventh amendment immunity to such suits by the parents of educationally handicapped children.

We begin our discussion of the first question by noting that this is not a question of whether this State has waived its sovereign immunity as to *tort* liability. Instead, the liability in controversy is the statutory "financial responsibility for funding the non-public educational placement of disabled children." Therefore, the certified questions involve actions against the State stemming from its administration of the special education statute, RSA ch. 186-A (currently at RSA ch. 186-C (Supp. 1983)).

 A waiver of sovereign immunity must be accomplished by legislative action. *See Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182 (1985); *City of Berlin v. State*, 124 N.H. 627, 632–33, 474 A.2d 1025, 1028 (1984); *see also* RSA 99-D:1 (Supp. 1983); RSA 491:8. Such statutory waivers of sovereign immunity, however, have been strictly construed. *State v. Brosseau*, 124 N.H. 184, 190, 470 A.2d 869, 873 (1983) (citing *Chasse v. Banas*, 119 N.H. 93, 96, 399 A.2d 608, 610 (1979)). Thus, in order to determine whether, and to what extent, sovereign immunity has been waived with respect to claims for education for the handicapped, we must examine the express provisions of RSA ch. 186-A (currently at RSA ch. 186-C (Supp. 1983) (effective July 1, 1981)) (hereinafter referred to as the State statute).

The State statute empowers the board of education to adopt rules concerning various aspects of the administration of the special education program, including the development of an appeal process from school district decisions. RSA 186-C:16, IV (Supp. 1983). Pursuant to this statutory grant, the State Board of Education has adopted rules which provide procedural safeguards to parents and legal guardians of handicapped children, including the "right to appeal any decision of the local school district regarding the identification, evaluation, Individual Education Program, provision of a free, appropriate public education, or placement of the education-

ally handicapped student. . . ." NEW HAMPSHIRE STANDARDS FOR THE EDUCATION OF HANDICAPPED STUDENTS, ED 1125.01(a) (1981). These rules allow for a complaint, an impartial due process hearing procedure, and an appeal procedure to the board of education, *id.* at chapter ED 1127, and provide that the "decision made by the State Board of Education is final, unless a party appeals to civil court." *Id.* at ED 1127.03(g).

"State law is silent as to how review of the State board's decision in these matters may be obtained," *Petition of Milan School District*, 123 N.H. 227, 231, 459 A.2d 270, 273 (1983), and this court has twice refused to review the board of education's decisions on petitions for writs of certiorari. Instead, we have held that the "petitioner may proceed in the superior court or in the United States District Court for the District of New Hampshire." *Petition of Darlene W.*, 124 N.H. 238, 241, 469 A.2d 1307, 1309–10 (1983); *see Petition of Milan School District, supra* at 233, 459 A.2d at 274; *In re Laurie B.*, 125 N.H. 784, 788, 489 A.2d 567, 570 (1984). Therefore, the appropriate remedy, under the State statute, is the use of the administrative appeal process until a final decision is rendered by the board of education, followed by an appeal either to the State superior court or to the federal district court.

Disputes over who bears the cost of educational expenses should be resolved first by exhausting the administrative procedure provided by the State. *See In re Laurie B., supra* at 788–89, 489 A.2d at 570. *See also Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981) (exhaustion of administrative remedies doctrine functions to prevent the disruption of administrative processes by withholding judicial review until the agency develops the relevant facts, applies its expertise and exercises the discretion entrusted to it by law); *Bradley v. Weinberger*, 483 F.2d 410 (1st Cir. 1973) (exhaustion requirement is grounded in substantial concerns of fairness, orderly procedure, and competence). *See generally* 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE ch. 26 (2d ed. 1983); L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 424–58 (1965); Van Pelt, *Compensatory Educational Services and the Education for All Handicapped Children Act*, 84 WIS. L. REV. 1469, 1490 n.6 (1984); Fuchs, *Prerequisites to Judicial Review of Administrative Agency Action*, 51 IND. L. J. 817, 859–69 (1976).

Under the provisions of the State statute, the school districts are obligated to make decisions concerning the education of handicapped children and to pay for the cost of supplying that education. RSA 186-C:10 (Supp. 1983). The school districts' decisions

may be appealed by the parents of handicapped children, using the procedures established by the board of education. RSA 186-C:16, IV (Supp. 1983). Thus, the political subdivision expressly obligated to respond to the claims of parents is the local school district. When there is a further appeal to the civil courts, the respondent logically should be the same, and the local school districts therefore may be sued. Since the statute does not deal with State liability, it is clear that the State has not, in that statute, waived its sovereign immunity. Instead, the State's responsibility is limited to appropriating funds to be used by the school districts, RSA 186-C:12, :18 (Supp. 1983), and to adopting rules implementing the special education program, RSA 186-C:16 (Supp. 1983).

The State statute does not offend the Education for All Handicapped Children Act of 1975 (PUB. L. 94–142, hereinafter the federal act), because the federal act does not require that States provide alternative causes of action outside the required administrative procedures. *See* 20 U.S.C. §§ 1400–54 (1982 and Supp. 1983). Those required procedures provide that any aggrieved party shall be given notice and an opportunity to be heard on issues, including "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E) (1982); *see Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 182–83 (1982). The rules adopted by the New Hampshire Board of Education provide aggrieved parties with an impartial due process hearing procedure to appeal school district decisions, NEW HAMPSHIRE STANDARDS FOR THE EDUCATION OF HANDICAPPED STUDENTS, chapter ED 1127 (1981), and therefore satisfy the eligibility requirements of the federal act.

Having found that the purpose and provisions of the federal act are not offended by our State statute, we answer the first question in the negative as to suits by parents against the State and its agencies.

The second question certified to this court is whether "RSA 186-A, now RSA 186-C, constitute[s] a waiver of the State's eleventh amendment immunity from a suit in Federal court?"

The eleventh amendment to the United States Constitution provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another

State." *Edelman v. Jordan*, 415 U.S. 651, 662–63, *reh'g denied*, 416 U.S. 1000 (1974). This consideration is especially strong when a plaintiff seeks to enforce a State statute in federal court. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).

 ██ A State may, however, waive its eleventh amendment immunity from suit in federal court. *Edelman, supra* at 671–72. "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [the Supreme Court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Id.* at 673 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). We have adopted the United States Supreme Court's standard for ascertaining the existence of eleventh amendment waivers. *State v. Brosseau*, 124 N.H. at 191, 470 A.2d at 874. Therefore, we must determine whether the State statute waives eleventh amendment immunity either by express language or by overwhelming implication.

There was no express language in former RSA chapter 186-A which waived New Hampshire's eleventh amendment immunity from suit in federal courts. The only section of the statute which discussed the federal-state relationship was RSA 186-A:10, which stated in relevant part:

> "The state board of education is hereby authorized to cooperate with the federal government or any agency thereof in the development of any plan for the education of handicapped children and to receive and expend, in accordance with such plan, all funds made available to the state board of education from the federal government or any of its agencies, the state or from other sources."

This language pertained to the development of plans and the expenditure of funds, not to the forum for hearing claims. RSA 186-A:10 has been superseded by RSA 186-C:12 (Supp. 1983), which contains substantially the same language. Since the State statute contains no express language waiving the State's eleventh amendment immunity, we will examine whether immunity has been waived by overwhelming implication.

"The law governing the educational rights of handicapped children has been referred to as a 'hybrid,' comprised of elements of both federal and State law." *Petition of Milan School District*, 123 N.H. at 230, 459 A.2d at 272 (citing *Garrity v. Gallen*, 522 F. Supp. 171, 221 (1981)). As a result, we must review the federal act to ascertain "whether Congress had intended to abrogate the immunity . . . , and

whether the State by its participation in the program authorized by Congress had in effect consented to the abrogation of that immunity." *Edelman v. Jordan*, 415 U.S. at 672.

 A State's receipt of federal funding for the education of its handicapped children is conditioned upon compliance with procedures set out in the federal act. 20 U.S.C. §§ 1412, 1413 and 1416 (1982); *Rowley*, 458 U.S. at 179. New Hampshire has received substantial federal funding under this program (over 4 million dollars in 1984 and again in 1985), and we will assume here that it is therefore bound by the federal guidelines. *Petition of Milan School District*, 123 N.H. at 230, 459 A.2d at 272. Among the requirements of the federal act is a requirement that:

> "Any party aggrieved by the findings and decision [of the State educational agency] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a *district court of the United States* without regard to the amount in controversy. . . ."

20 U.S.C. § 1415(e)(2) (1982) (emphasis added). This language does not, "by its terms authorize suit . . . against a general class of defendants which literally include[s] States or state instrumentalities." *Edelman*, 415 U.S. at 672; *accord M. R. v. Milwaukee Public Schools*, 495 F. Supp. 864 (E.D. Wis. 1980) (no congressional authorization exists under the federal act to abrogate the State's eleventh amendment immunity from retroactive monetary claims payable from the State treasury). Instead, the language provides a procedure for review of school district decisions. This provision of an administrative adjudicatory tribunal does not subject that tribunal to suit by the parties appearing before it. Nor did the State, by its acceptance of federal funds under the federal act, implicitly consent to suit in federal court.

 The United States Supreme Court has stated that, "[t]he mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." *Edelman*, 415 U.S. at 673; *accord Matthews v. Ambach*, 552 F. Supp. 1273 (W.D.N.Y. 1982) (State's receipt of funds under the federal act did not result in a waiver of State's eleventh amendment immunity); *see generally Atascadero State Hospital v. Scanlon*, 105 S. Ct. 3142 (1985). For a thorough discussion of considerations militating

against finding that a State has impliedly consented to suit in federal court by accepting federal funds, see *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d at 776–77.

While this court has noted that State law is silent concerning how review of the State board's decision may be obtained, *Petition of Milan School District*, 123 N.H. at 231, 459 A.2d at 273, we have declared that "[a]ny party aggrieved by a decision of the board of education may appeal the administrative decision to a State trial court *or United States District Court.*" *In re Laurie B.*, 125 N.H. at 788, 489 A.2d at 570 (1984) (emphasis added); *Petition of Milan School District*, 123 N.H. at 232–33, 459 A.2d at 274. Thus, we have interpreted the State's participation under the federal act to subject agency decisions to review by the federal courts. This does not, however, mean that the State by granting review of agency decisions has subjected itself or its agencies to suit as named parties. As discussed earlier, the local school districts are the parties subject to suit. The State agency is merely the impartial adjudicatory tribunal.

Although the State may not be named as a party to a suit by the parents, the local school district may be sued pursuant to the administrative procedure provided by the State Board of Education. In order for the federal court to have jurisdiction over a claim against a local school district under the State statute, the aggrieved party must first exhaust the administrative appeals process as discussed earlier in this opinion. *See In re Laurie B.*, 125 N.H. at 788, 489 A.2d at 570; *Petition of Darlene W.*, 124 N.H. at 241, 469 A.2d at 1309; *Petition of Milan School District*, 123 N.H. at 232, 459 A.2d at 274.

We answer the second certified question in the negative as to suits by parents against the State and its agencies.

The questions certified by the United States District Court are answered, within the context presented, in the negative.

*Remanded.*

All concurred.