256

Hillsborough-southern judicial district
No. 96-621

GLORIA KONEFAL & a.

v.

HOLLIS/BROOKLINE COOPERATIVE SCHOOL DISTRICT & a.

December 29, 1998

*Upshall, Cooper & Temple, P.A.*, of Concord (*Thomas G. Cooper* on the brief and orally), for the plaintiffs.

*Soule, Leslie, Kidder, Zelin, Sayward & Loughman*, of Salem (*Diane M. Gorrow* and *Barbara F. Loughman* on the brief, and *Ms. Gorrow* orally), for the defendants.

JOHNSON, J. The plaintiffs, Gloria and Robert Konefal, appeal a decision of the Superior Court (*Hollman*, J.) granting a motion to dismiss filed by the defendants, Hollis/Brookline Cooperative School District, the Hollis/Brookline Cooperative School Board, the Hollis School District, the Hollis School Board, the Hollis School District superintendent, and various administrators of the two school districts. We affirm.

In considering the defendants' motion to dismiss, the trial court assumed the following facts to be true. Gloria Konefal was employed

by the Hollis Area High School as an English teacher. Ms. Konefal, who has twenty-two years of teaching experience and two masters degrees, ranked second in seniority among the high school's English teachers during the 1990-1991 school year. She was the only English teacher at the high school who was not a member of the Hollis Education Association (union).

During that school year, the Hollis School District and the Brookline School District agreed to form the defendant Hollis/Brookline Cooperative School District. On March 25, 1991, all Hollis High School teachers received notices from the Hollis School District notifying them that their contracts would not be renewed because the Hollis School District would not operate a high school after June 30, 1991. With the exception of Ms. Konefal, however, all of the high school's English teachers later had their contracts renewed by the cooperative school district. Ms. Konefal asserts that her contract was not renewed because she refused to join the union, and because she did not participate in extracurricular activities not required under her contract.

Ms. Konefal appealed her contract non-renewal to the school board, see RSA 189:14-a, I(b) (1989) (amended 1995), which affirmed the superintendent's decision. The plaintiffs then filed suit in the United States District Court for the District of New Hampshire alleging that the defendants violated Ms. Konefal's federal constitutional right not to associate with the union. The District Court (McAuliffe, J.) dismissed the complaint for failure to state a viable federal cause of action against any of the defendants.

The plaintiffs then filed suit in the superior court, alleging: (1) wrongful discharge; (2) violation of Ms. Konefal's federal and State constitutional rights not to associate with the union; (3) intentional infliction of emotional distress; (4) breach of the collective bargaining agreement; (5) violation of implied covenants of good faith and fair dealing; and (6) loss of consortium. The superior court dismissed the plaintiffs' constitutional claims, ruling that the State constitutional right of association mirrored that of the Federal Constitution. The court dismissed the intentional infliction of emotional distress claim, ruling as a matter of law that the defendants' conduct was not extreme and outrageous. The court refused to consider the plaintiffs' other claims because the public employee labor relations board (PELRB) has primary jurisdiction over unfair labor practice claims, and Ms. Konefal failed to exhaust her administrative remedies. The court ruled that it should refrain from exercising concurrent jurisdiction until the dispute had been decided by the PELRB.

On appeal, the plaintiffs argue that the trial court erred by: (1) dismissing Ms. Konefal's contract claims for failure to exhaust administrative remedies, or, alternatively, because primary jurisdiction has been vested in the PELRB; (2) dismissing Ms. Konefal's intentional infliction of emotional distress claim by ruling that the defendants' actions did not constitute extreme and outrageous conduct; and (3) failing to find that the New Hampshire Constitution protects an individual's right to associate or not to associate with a union when membership in the union was utilized as a criterion for contract renewal.

> In reviewing a motion to dismiss on appeal, we ask whether the plaintiff's allegations are reasonably suscepti- ble of a construction that would permit recovery. For the purposes of review, we accept as true the plaintiff's allega- tions of fact, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. However, we need not accept allegations in the writ that are merely conclusions of law.

*Gardner v. City of Concord*, 137 N.H. 253, 255-56, 624 A.2d 1337, 1338-39 (1993) (quotation and citations omitted).

The PELRB has primary jurisdiction over unfair labor practices. RSA 273-A:6, I (1987) (amended 1992); *see School Dist. No. 42 v. Murray*, 128 N.H. 417, 421, 514 A.2d 1269, 1272 (1986). "Primary jurisdiction in an agency requires judicial abstention until the final administrative disposition of an issue, at which point the agency action may be subject to judicial review." *Bd. of Trustees v. Keene State Coll. Educ. Assoc.*, 126 N.H. 339, 342, 493 A.2d 1121, 1124 (1985). Here, the plaintiffs did not pursue administrative proceed- ings that could have eliminated or narrowed the parties' dispute. Accordingly, applying the doctrine of primary jurisdiction, the trial court correctly concluded that the plaintiffs' contract claims should have been resolved before the PELRB in the first instance.

"The rule requiring administrative remedies to be exhausted prior to appealing to the courts is based on the reasonable policies of encouraging the exercise of administrative expertise, preserving agency autonomy and promoting judicial efficiency." *Bradley v. City of Manchester*, 141 N.H. 329, 331-32, 682 A.2d 1194, 1196 (1996) (quotation omitted). We have recognized that the exhaustion of administrative remedies doctrine is flexible, and that exhaustion is not required under certain circumstances. *Metzger v. Brentwood*, 115 N.H. 287, 290, 343 A.2d 24, 26 (1975). Exhaustion is not required, for example, when further administrative action would be useless

and result in delays that might make the claim moot. *See Petition of Chapman*, 128 N.H. 24, 26, 509 A.2d 753, 755 (1986). Ms. Konefal argues that after the school board affirmed the superintendent's decision, requiring her to proceed before the PELRB would require her to "exhaust administrative remedies she deemed ineffective while . . . unable to regain employment as a teacher with the [defendant]." We disagree. Although the administrative process may have taken time, Ms. Konefal could still have obtained a suitable remedy if her claim was proved. *Cf. id.* (noting that exhaustion would not be required if delay would destroy ability to obtain relief).

■ Administrative remedies must be exhausted when the question involves the proper exercise of administrative discretion. *See Tremblay v. Town of Hudson*, 116 N.H. 178, 179-80, 355 A.2d 431, 432 (1976). When a constitutional question is implicated in an administrative context, courts often require exhaustion "based on the important prudential principle that a court should not resolve a constitutional question if a dispute can be resolved on another basis that avoids the need to resolve the constitutional question." 2 K. DAVIS & R. PIERCE, ADMINISTRATIVE LAW TREATISE § 15.5, at 332 (3d ed. 1994); *see* 2 AM. JUR. 2D *Administrative Law* § 512, at 499 (1994).

Ms. Konefal's constitutional claim would essentially require us to consider whether the school district improperly abused its discretion or violated the terms of the CBA in not renewing Ms. Konefal with little more than the plaintiffs' conclusory allegations that she was not renewed for her non-union status. The defendants dispute her assertion, and further, no court or agency has ever found that she was dismissed for this reason. Assuming as true that Ms. Konefal was terminated for her non-union status, *see Gardner*, 137 N.H. at 256, 624 A.2d at 1338, this dispute involves a wrongful termination which should be resolved before the PELRB in the first instance, *see Bd. of Trustees*, 126 N.H. at 342, 493 A.2d at 1124.

Because Ms. Konefal's claims require resolution of disputed fact, her claims involve a question of administrative discretion, *cf. John H. v. Brunelle*, 127 N.H. 40, 44, 500 A.2d 350, 352 (1985), and therefore, she should have exhausted her administrative remedies. Had Ms. Konefal further appealed to the PELRB, *see* RSA 273-A:5, I (1987), or to the State Board of Education, *see* RSA 189:14-b (1989), her dispute may have been favorably resolved based on a grievance procedure within the collective bargaining agreement, or upon statutory grounds. Instead, she sought judicial relief, asserting that her dismissal violated her constitutional rights. *Cf. Appeal*

*of City of Portsmouth, Bd. of Fire Comm'rs*, 140 N.H. 435, 438, 667 A.2d 345, 348 (1995) (deciding case raising free speech issue on statutory, rather than constitutional grounds). "If . . . an administrative proceeding might leave no remnant of [a] constitutional question, the administrative remedy plainly should be pursued." *California Comm'n v. United States*, 355 U.S. 534, 539-40 (1958). Since Ms. Konefal circumvented the administrative process, no record exists to guide us in evaluating the constitutional question she asserts. *Cf. In re Todd P.*, 127 N.H. 792, 798, 509 A.2d 140, 144 (1986). By statute, the legislature has established the PELRB as the primary forum to resolve these factual disputes. *See* RSA 273-A:5, I(c), :6, I.

An assertion that a constitutional right has been violated does not, by itself, obviate the requirement that a party exhaust administrative remedies. 2 AM. JUR. 2D *Administrative Law* § 512, at 499 (1994). If we were to accept a constitutional claim without exhausting administrative remedies, "[t]he effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that [appellants' constitutional rights were implicated]." *DuBois Clubs v. Clark*, 389 U.S. 309, 312 (1967). The trial court correctly denied the petitioner's substitution of a civil trial for the administrative proceedings specifically provided by the legislature. Accordingly, we decline to decide the constitutional question.

Next, we consider whether the trial court properly dismissed the intentional infliction of emotional distress claim. We have held that one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress. *Morancy v. Morancy*, 134 N.H. 493, 495, 593 A.2d 1158, 1159 (1991). The trial court found as a matter of law that the defendants' conduct was not extreme and outrageous. Assuming that Ms. Konefal was not renewed because of her non-union status, *see Gardner*, 137 N.H. at 255-56, 624 A.2d at 1338-39, that fact would at best indicate that her non-renewal arose from an improper motive that may support a claim for wrongful termination. *See Cloutier v. A. & P. Tea Co., Inc.*, 121 N.H. 915, 922, 436 A.2d 1140, 1143-44 (1981). It would not, however, support a claim for intentional infliction of emotional distress. *See Doe v. Kohn Nast & Graf, P.C.*, 862 F. Supp. 1310, 1329 (E.D. Pa. 1994). "Although discharging an employee . . . may be illegal and reprehensible, a great deal more is required to approach outrageous conduct. Such conduct is bad conduct, but it is not outrageous and intolerable conduct." *Lococo v. Barger*, 958 F. Supp. 290, 298 (E.D. Ky. 1997).

Moreover, severe emotional distress is an element of the tort. *Morancy*, 134 N.H. at 496, 593 A.2d at 1160. Neither plaintiffs' complaint nor their responsive pleadings contain references to any specific instances of emotional distress, or allegations of emotional distress sufficient to survive a motion to dismiss.

*Affirmed.*

BROCK, C.J., did not participate; the others concurred.