Strafford
No. 78-138

CAROL CHASSE

v.

CHRISTINA BANAS

CAROL CHASSE

v.

ABDULAZIZ KHAKEE & a.

February 28, 1979

94

*Barrett & McNeill P.A.*, of Durham (*John T. Barrett, III* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden,* of Concord (*Peter F. Imse* orally), for Abdulaziz Khakee.

*Thomas D. Rath,* attorney general (*Anne E. Cagwin,* assistant attorney general, orally), for Abdulaziz Khakee, Luigi Dolcino, New Hampshire Hospital and Bernard March.

LAMPRON, C.J.   These are actions against individual doctors employed by the New Hampshire Hospital, the superintendent of the hospital, and the State hospital itself for the negligent treatment of an involuntarily committed mental patient. Before trial all the defendants moved to dismiss the plaintiff's causes of action against them on the grounds of sovereign immunity. Their motions were granted, and consequently, plaintiff's actions were dismissed. Plaintiff seasonably excepted and all questions of law were reserved and transferred by *Mullavey,* J. We sustain the exceptions and remand.

On or about March 9, 1970, the plaintiff, due to a mental disability, was involuntarily committed to the New Hampshire Hospital. Dr. Christina Banas was the first doctor to examine the plaintiff and diagnosed that she was suffering from an "acute schizophrenic episode". During the course of the plaintiff's confinement Dr. Banas, independently and under the supervision of Dr. Abdulaziz Khakee and Dr. Luigi N. Dolcino, prescribed and administered several medications to the plaintiff for controlling her psychotic symptom. One of the drugs that was prescribed and administered was Mellaril. This drug was given to the plaintiff for more than one month in daily dosages ranging from 1200 milligrams to 2800 milligrams. Dr. Banas, in answer to plaintiff's interrogatories, conceded that the recommended daily dosage, under normal circumstances, is only 800 milligrams.

Plaintiff contends that if permitted to proceed to trial she would prove through expert witnesses that the administration and prescription of three and a half times the maximum recommended daily dosage of this drug was negligent according to accepted medical standards because it was well known in the medical profession that this excessive dosage could cause severe and permanent sight impairment. Plaintiff further contends that she would prove that the excessive dosage of this medication caused her to lose extensive use of her vision. The issue that this court must address is whether the doctrine of sovereign immunity bars the plaintiff's actions.

Plaintiff argues that the enactment of RSA ch. 135-B, Civil Procedures Relating To The Admission And Treatment Of The Mentally Ill, should be considered by this court as a waiver of sovereign immunity for causes of action against the New Hampshire Hospital and its

doctors. The State is free to "waive its immunities and permit suits to be brought and recovery obtained by plaintiffs injured by the negligence of its agents." *Sousa v. State*, 115 N.H. at 344, 341 A.2d at 285 (1975). A waiver will exist "if the legislature has provided for it by statute either expressly or by reasonable implication." *Public Service Co. v. State*, 102 N.H. 54, 56, 149 A.2d 874, 876 (1959).

■■ Statutory waivers of sovereign immunity have been strictly construed in this State. *Public Service Co. v. State*, 102 N.H. at 56, 149 A.2d at 876. Nonetheless, if a statute by its terms evidences a clear intent to grant a right to sue and recover damages caused by the negligent actions of certain State officials, that statute must be construed to carry out the will and beneficent purpose of the legislature. *See Nazzaro v. Merrimack Sch. Dist.*, 118 N.H. 287, 290, 385 A.2d 230, 232 (1978). One of the primary reasons RSA ch. 135-B was enacted was to guarantee humane treatment for the mentally ill. RSA 135-B:1 (Purpose and Policy). To this end RSA 135-B:43 provides, in pertinent part, that [e]very mentally ill patient has a *right* to *adequate* and *humane* treatment . . . ." (Emphasis added.) By enacting this provision the legislature has done more than enunciate general objectives and goals, *see Matter of Doe*, 118 N.H. 226, 228, 385 A.2d 221, 222 (1978); it has recognized civil rights of the mentally disabled who are confined in State institutions. *See Dolcino v. Clifford*, 114 N.H. 420, 421, 321 A.2d 577, 578 (1974).

■ This statutory mandate creates a right for those patients involuntarily committed to a State hospital and concomitantly imposes a duty upon employees of the State hospital to provide adequate and humane treatment. "The existence of a statutory right implies the existence of all necessary and appropriate remedies." *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239 (1969). The most appropriate remedy is an action for damages. W. PROSSER, LAW OF TORTS § 1, at 2 (4th ed. 1971). Indeed, the Supreme Court of the United States has stated:

> A disregard of the command of the statute is a wrongful act and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied . . . . *Texas & Pac. Ry. Co. v. Rigsby*, 241 U.S. 33, 39 (1916).

The only way in which a civilly committed patient can obtain a remedy is to bring an action against the State hospital or its agents.

■ To deny an involuntarily committed patient the right to legal action to enforce this right would prove the legislature's guarantee of

adequate treatment to be an empty promise. *See Halderman v. Penn-hurst State School and Hospital*, 446 F. Supp. 1295, 1322 (D. Pa. 1977); *Eubanks v. Clarke*, 434 F. Supp. 1022, 1026–27 (D. Pa. 1977). There-fore we are convinced that the legislature, by guaranteeing the civilly committed patient the right to adequate and humane treatment, has waived any claim of sovereign immunity in an action for damages where a patient at the New Hampshire Hospital seeks to vindicate the denial of this right. *See O'Neill v. State Highway Department*, 50 N.J. 307, 316 n.1, 235 A.2d 1, 5 n.1 (1967).

■ An action for damages that arises from such a breach of a statutory duty would be in tort. *See Dunbec v. Exeter & Hampton Elec.*, 119 N.H. 4, 396 A.2d 1101 (1979). In addition to the requirements of proximate causation and injury in fact, there are two other essential requirements for recovery: first, the right/duty that the statute man-dates must be intended to protect the plaintiff or a class of which he is a member; and second, that there be some "directive to the defendant." *See Emery v. Booth*, 114 N.H. 646, 647–48, 325 A.2d 788, 789 (1974). G. Mowe, *Federal Statutes and Implied Private Actions*, 55 ORE. L. REV. 3, 11–12 (1976); RESTATEMENT OF TORTS § 286 (1934); RESTATEMENT (SECOND) OF TORTS § 286 (1965). RSA ch. 135-B was intended: "to reduce the occurrence, severity and duration of mental, emotional and behavioral disabilities by guaranteeing humane treatment for the mentally ill, and enable the afflicted to obtain needed care and rehabil-itation." RSA 135-B:1. There is little question that the plaintiff, a mentally disabled person involuntarily committed to the State hospi-tal, was within the protection of this statute.

■ The statutory directive, or standard of conduct, imposed upon the employees of the State hospital mirrors the right that is guaran-teed by RSA 135-B:43. That is, employees of the hospital must provide adequate and humane treatment. This is not to say that an action may be maintained for negligent treatment when a doctor decided to employ one type of an *accepted* therapy as opposed to another type. *See Bartlett v. State*, 52 App. Div. 2d 318, 383 N.Y.S.2d 763 (1976); *Whitree v. State*, 56 Misc. 2d 693, 290 N.Y.S.2d 486 (N.Y.Ct. Cl. 1968). Rather, adequate and humane treatment means that the doctors must treat an involuntarily civilly committed patient in a manner that is consistent with accepted medical standards. *See Carrigan v. Sacred Heart Hos-pital*, 104 N.H. 73, 178 A.2d 502 (1962).

■ The plaintiff has the burden of proving that the dosage level of the drug Mellaril administered to her was negligent under recognized

medical standards. 61 AM. JUR. 2d *Physicians, Surgeons, and Other Healers* § 188 (1972). We must decide, however, whether her cause of action based on events which occurred between March and July 1970 may be asserted under RSA 135-B:43 against all of the various defendants. Plaintiff's action against Dr. Banas was filed in 1972; the other defendants were added to the suit in 1974 after the legislature enacted RSA ch. 135-B in 1973.

■■ RSA ch. 135-B does not impose a new duty on the defendant doctors, as it has long been established law that the relation of doctor and patient places on the doctor the obligation of proper treatment by the exercise of the requisite medical skills. 61 AM. JUR. 2d *Physicians, Surgeons, and Other Healers* § 106 (1972). The plaintiff must still prove by a preponderance of evidence that "negligent acts or omissions" in the performance of the doctor's duties caused her injuries. The effect of RSA 135-B:43 and :49 is to waive immunity from recognized causes of action. *See Feres v. United States,* 340 U.S. 135, 142 (1950).

Because RSA 135-B:43 and :49 imposed no new duties on the defendants, it is not unfair or inequitable to apply this statute retroactively to plaintiff's actions. *Estate of Kenneth v. State,* 115 N.H. 50, 53, 333 A.2d 452, 454 (1975). On the contrary, such an application carries out the beneficent intent of the statute that: "[e]very mentally ill patient has a right to adequate and humane treatment." RSA 135-B:43. Furthermore the doctors themselves are not prejudiced by their loss of the defense of immunity, because the State is obligated to provide counsel for their defense and to pay any "awards, judgments or settlements rendered against" them. RSA 135-B:49; 2 J. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 41.06, at 269 (4th ed. C. Sands 1973).

If the legislature intended to preserve doctors' immunity against malpractice actions by patients at the State hospital, it could have done so by express language as it used in RSA ch. 99-D. Section 1 of that law, which extends to all State officers and employees defense and indemnification, is a statement of policy. It states specifically that the intent of the chapter is to protect State officers against claims arising from acts in the course of their employment. "It is not intended to create a new remedy for injured persons, to waive the state's sovereign immunity, or to waive the sovereign immunity of the state which is extended by law to state officers, trustees, officials and employees."

Absent such or similar language in the provisions of RSA 135-B:49, we hold that the motions to dismiss plaintiff's actions filed by all the defendants were erroneously granted and the actions are remanded to

the superior court for trial. In view of the result reached, we need not consider other issues raised.

*Plaintiff's exceptions sustained: remanded.*

BROCK, J., concurred in the result; the others concurred.