**Terry and Bonnie NOYES**

v.

**Michael MOYER, et al.**

No. C–92–203–L.

United States District Court,
D. New Hampshire.

Aug. 9, 1993.

David H. Bownes, A. Gerard O'Neil, Laconia, NH, for plaintiff.

Wayne C. Beyer, Matthew Cairns, Susan Y. Min, Atty. General's Office, Concord, NH, for defendants.

## ORDER

LOUGHLIN, Senior District Judge.

Before the court is State defendants', New Hampshire Hospital, Robert M. Vidaver, M.D., James Reinhard, M.D., and Dr. Paul Gorman, Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

*Facts*

Plaintiff Terry Noyes suffers from a schizoid affective disorder and takes antipsychotic medications to control his condition. On November 4, 1990, Mr. Noyes allegedly began to experience an increase in his psychological difficulties due to a cessation of his medication. Plaintiff Bonnie Noyes, the wife and legal guardian of Terry Noyes, took her husband to the emergency room of the Lakes Region General Hospital where a preliminary evaluation was conducted and the decision made that Mr. Noyes should be admitted to New Hampshire Hospital (hereinafter N.H. Hospital) through the voluntary procedure by guardian, N.H.REV.STAT.ANN. § 464–A:25 (hereinafter RSA). The treating physician then sought transportation for plaintiff to N.H. Hospital. Lieutenant Oetinger of the Laconia Police Department allegedly refused to transport Terry Noyes because his admission had not been arranged pursuant to RSA § 135–C:20 *et seq.* N.H. Hospital allegedly refused to transport or admit the plaintiff because hospital policy allegedly did not permit voluntary admissions on weekends.

Mr. Noyes thereafter left the Lakes Region Hospital and walked to the Laconia Police Station seeking help and transportation to the N.H. Hospital. Plaintiff's requests were denied by the Laconia Police and Mr. Noyes left and returned home. Upon his arrival home, plaintiff Bonnie Noyes allegedly noted physical injuries to her husband and an increased level of agitation. Throughout that evening Terry Noyes' emotional state deteriorated causing distress to plaintiff Bonnie Noyes.

Because of her husband's condition plaintiff Bonnie Noyes phoned the Lakes Region Hospital and was told to bring her husband to the emergency room to begin the process of involuntary admission to the New Hampshire Hospital. Terry Noyes refused to accompany his wife to the hospital. The hospital was informed of this and contacted the Laconia Police Department informing them of Mr. Noyes' condition and his refusal to accompany his wife to the hospital. Members of the Laconia Police Department thereafter appeared at the Noyes' home and upon being confronted by Lieutenant Michael Moyer and Detective David Gunter Terry Noyes became frightened and confused and left the premises in an alleged attempt to avoid confrontation.

Upon Terry Noyes' exit from the premises, Lieutenant Moyer followed him outside and allegedly tackled him in the front yard and a struggle ensued. Detective Gunter then allegedly joined Lieutenant Moyer and both allegedly used excessive and unreasonable

force upon plaintiff thereby inflicting physical injury. Plaintiffs allege that both officers struck and kicked Terry Noyes while he was on the ground resulting in a fracture to his left leg and other bodily injury. Plaintiffs allege that defendant Officer Jaran arrived at the scene and began to physically assault Mr. Noyes.

After being restrained, plaintiffs allege that the officers pulled down Terry Noyes' pants and dragged him to the police van. Throughout this entire episode Terry Noyes allegedly complained of severe pain in his left leg but the officers nevertheless made him stand on his fractured leg.

Mr. Noyes was then transported to the Laconia Police Department and allegedly remained in the back of the police vehicle for an hour despite complaints relating to his leg and requests for medical help. An unidentified physician arrived at the Laconia Police Department and conducted an interview with Mr. Noyes through a small window of the police vehicle, but Mr. Noyes allegedly received no medical treatment at that time.

About one hour after being taken from his residence Mr. Noyes was released into the custody of Daniel Collis of the Belknap County Sheriff's Office and approximately one hour later was charged with criminal conduct and released on bail. Mr. Noyes was then transported to the New Hampshire Hospital in Concord for an involuntary emergency admission. He was thereafter taken to Concord Hospital where he was treated for an acute fracture of his left tibia and fibula which plaintiffs allege was the direct result of the actions of the defendants. Mr. Noyes underwent surgery on the fracture site and remained hospitalized for a period of seven to ten days.

On November 5, 1990 Mr. Noyes was committed to the N.H. Hospital pursuant to the guardian provision of RSA § 464–A:25. Although N.H. Hospital was notified of the potential for infection to Mr. Noyes' leg he subsequently developed such infection and was transferred back to Concord Hospital for emergency treatment. Plaintiffs allege the infection was the direct result of New Hampshire Hospital's failure to monitor and treat plaintiff's injuries.

Plaintiffs claim that the actions of the defendants jointly and severally deprived Terry Noyes of his rights, privileges and immunities secured him by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, caused him great pain and suffering and emotional distress and permanent loss of the full use of his left leg.

Plaintiffs' original complaint was against the N.H. Hospital and its employees in their official capacities pursuant to 42 U.S.C. § 1983. The court dismissed these claims. *See* Doc. 13. On March 16, 1993, plaintiffs filed an amended complaint to name the following defendants of N.H. Hospital in their individual capacities: defendant Robert M. Vidaver, M.D., Medical Director of N.H. Hospital, defendant James Reinhard, M.D., the physician in charge on November 4, 1990 at the N.H. Hospital and defendant Dr. Paul Gorman, an employee of N.H. Hospital. The amended complaint states that the defendant N.H. Hospital and the above named doctors had a statutory and constitutional duty to 1) prevent mentally ill persons from harming themselves or others; 2) insure that any individual eligible for treatment not be deprived of any legal right to which all citizens are entitled; and, 3) prevent discrimination in any manner because of race, color, sex, religion, national origin, age, *disability*, or *degree of disability*. *See* Doc. 20 (emphasis in original).

Defendants presently move to dismiss all claims against them claiming that they did not violate plaintiff Terry Noyes' rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 by failing to admit him as a voluntary admission on November 4, 1990; that even if the defendants did violate plaintiff's constitutional rights defendants enjoy qualified, sovereign and official immunity and are therefore not liable under 42 U.S.C. § 1983. The court will address each of these contentions in turn.

*Discussion*

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support the claims". *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause". *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992); *See also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory". *Garita,* 958 F.2d at 17 (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)).

**Due Process**

■ Plaintiffs contend that by failing to admit the plaintiff Terry Noyes as a voluntary admission by guardian on November 4, 1990, defendants thereby violated plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. For the following reasons the court disagrees.

■ Generally speaking, "a State is under no constitutional duty to provide substantive services for those within its borders ... [However], [w]hen a person is institutionalized-and wholly dependent on the State– ... a duty to provide certain services does exist ..." *Youngberg v. Romeo,* 457 U.S. 307, 317, 102 S.Ct. 2452, 2459, 73 L.Ed.2d 28 (1982). "The substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others". *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989) (citing *Youngberg, supra,* 457 U.S. at 314–325, 102 S.Ct. at 2457–2463). The *Youngberg* court reasoned that "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed—who may not be punished at all—in unsafe conditions". *Youngberg* at

315–316, 102 S.Ct. at 2458. The only time during which the Constitution imposes upon a State the duty to assume responsibility for a person's safety and general well-being is when that person is in the State's custody and is held there against his will. *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. at 1005–1006; *Monahan v. Dorchester Counseling Center, Inc.,* 961 F.2d 987 (1st Cir.1992). The state's duty to protect

> arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf ... In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf-through incarceration, institutionalization, or other similar restraint of personal liberty-which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005.

In the present case, plaintiff Terry Noyes was at no time on November 4, 1990 within the custody of the N.H. Hospital or its agents nor was he held there against his will. As plaintiffs themselves contend, plaintiff Terry Noyes was denied admission to the N.H. Hospital. The facts as alleged indicate that at no time did defendants ever impose any restraints on plaintiff's liberty, either through institutionalization or incarceration, which would constitute a deprivation of plaintiff's liberty interest thereby "triggering the protections of the Due Process Clause". *Id.*

Plaintiffs contend that a voluntary admission by guardian in the present context is the functional equivalent of an involuntary admission pursuant to 135–C:27 *et seq.,* save for the requirement of a recent dangerous act. However, the New Hampshire Hospital Policy and Procedure Manual defines "voluntary admission" as an "admission to the New Hampshire Hospital subsequent to the documented consent of the person being admitted or his or her legal guardian", *See* New Hampshire Hospital Policy and Procedure Manual at (III)(U) (Doc. 24, Exhibit A). For

the sake of argument, accepting plaintiffs' premise as true, the fact remains that at no time relevant hereto was the plaintiff voluntarily or involuntarily within the custody or control of the defendants so as to trigger the protections of the due process clause. Therefore, taking the facts as pled by plaintiff as true, the court finds that plaintiffs have failed to state a viable cause of action under the Due Process Clause of the Fourteenth Amendment.

**Equal Protection**

■ Plaintiffs, relying on the alleged statement of an unidentified employee of the hospital that the hospital "did not permit [voluntary] admissions on weekends", (*See* Doc. 26, p. 3), contend the status of Terry Noyes as a voluntary admission was the primary motive in denying him admission on November 4, 1990. The New Hampshire Hospital Policy and Procedure Manual states that "[r]eferring parties shall make every effort to refer applicants for voluntary admission between the hours of 8:00 A.M. and 4:00 P.M., Monday through Friday, excluding holidays". *See* Doc. 24, Exhibit A, (IV)(E). No such effort is required for involuntary admissions, emergency or non-emergency. Plaintiffs claim that had Terry Noyes qualified as an involuntary admittee he would've been admitted to the hospital.

■ Although plaintiffs failed to present a cognizable claim under the Due Process Clause of the Fourteenth Amendment, the Fourteenth Amendment nevertheless requires equal protection against state action, including discrimination which does not encroach on a person's liberty or property interests. *Johnson v. Pfeiffer*, 821 F.2d 1120, 1122 (5th Cir.1987). Although there is no constitutional right to mental health care, the state may not when it chooses to provide such service, discriminate in providing the service. *See Dudosh v. City of Allentown*, 665 F.Supp. 381, 392 (E.D.Pa.1987). As a state agency, the N.H. Hospital's policies and decisions are unexempt from the requirements of the Equal Protection Clause of the Fourteenth Amendment. *Bishop v. Moran*, 676 F.Supp. 416, 420 (D.R.I.1987) (citing *Avery v. Midland County, Texas*, 390 U.S. 474, 475–481, 88 S.Ct. 1114, 1115–1118, 20

L.Ed.2d 45 (1968). Because the N.H. Hospital's alleged policy of refusing voluntary admissions on weekends does not violate a fundamental right or affect a suspect classification, plaintiffs will bear the burden of showing that the alleged policy is unreasonable or arbitrary. *American Federation of Government Employees v. U.S.*, 622 F.Supp. 1109, 1112 (D.C.Ga.1984) (citing *Karr v. Schmidt*, 460 F.2d 609, 617 (5th Cir.1972), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972). The policy "must be rationally related to a legitimate government purpose" to withstand equal protection review. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985). If the "classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern". *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979).

Plaintiffs contend the defendants also had a statutory obligation to prevent discrimination in any manner because of race, color, sex, religion, disability or degree of disability. *See* RSA 135–C:56 (IV). However, RSA 135–C:56, which prohibits such discrimination against persons *receiving* mental health services, applies only to those persons who have been found eligible for services under RSA 135–C:13. *See* RSA 135–C:55 (emphasis added). Plaintiff Terry Noyes at all times relevant to the present discussion was not receiving mental health services at N.H. Hospital since he was not found eligible for admission. Indeed, that denial of admittance is the crux of plaintiff's complaint. While discrimination based on "race, color or religion, sex or inability to pay", RSA 135–C:13, is prohibited in the process of determining eligibility for admission, there is no statutory prohibition against discrimination in admission based upon disability or degree of disability. Plaintiffs' discrimination claim must therefore rest solely on constitutional grounds.

At this juncture, taking the facts pled by plaintiffs as true, the court finds that plaintiffs have stated a viable cause of action under the Equal Protection Clause of the Fourteenth Amendment.

## Qualified Immunity

Defendants contend that they are entitled to qualified immunity and therefore plaintiffs' claims must fail. The recognition of the defense of qualified immunity balances the paramountcy of "a damages remedy to protect the rights of citizens", *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982) (citations omitted), against the necessity of protecting "officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority". *Id.* "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The application of qualified immunity is not limited to those situations where the very action complained of "has previously been held unlawful" but extends to those situations where in "light of pre-existing law the unlawfulness [is] apparent". *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The objective reasonableness of the defendants' conduct is to be weighed against the clearly established law governing admission to a state mental institution. *Burns v. Loranger*, 907 F.2d 233, 236 (1st Cir.1990).

■ In regard to plaintiffs' due process claim, even if this court had found plaintiffs to have stated a viable cause of action, both the United States Supreme Court and the First Circuit have ruled that the only time during which the Constitution imposes upon a State the duty to assume responsibility for a person's safety and general well-being is when that person is in the State's custody and is held there against his will. *DeShaney* 489 U.S. at 199–200, 109 S.Ct. at 1005–1006; *Monahan*, 961 F.2d at 991. As discussed *supra*, defendants took no "affirmative act of restraining [Terry Noyes'] freedom to act on his own behalf-through incarceration, institutionalization, or other similar restraint of personal liberty-which is the deprivation of liberty triggering the protections of the Due Process Clause". *Id.* 489 U.S. at 200, 109

S.Ct. at 1006. Therefore the court concludes that Terry Noyes as a person seeking voluntary admission on November 4, 1990, did not have a clearly established right to admission under either federal constitutional or statutory law so as to protect him from himself or others such that a reasonable person in defendants' position would have known that their conduct violated Noyes' right to due process.

■ In their motion to dismiss, defendants fail to address the application of qualified immunity to plaintiffs' equal protection claim. That Terry Noyes' constitutional right to equal protection of the laws was firmly established at the time he was denied admittance is without question. *See e.g., Dudosh supra*, at 394. Therefore, defendants are not entitled to qualified immunity with respect to plaintiffs' equal protection claim.

## Sovereign and Official Immunity

■ The defendants contend that to the extent they are being sued in their official capacities, plaintiffs' claims are barred by sovereign and official immunity. This court made clear in its order of December 7, 1992 that plaintiffs' claims brought under 42 U.S.C. § 1983 against the hospital and its employees in their official capacities were dismissed. (*See* Doc. 13)

Plaintiffs contend that the defendants were negligent in their determination that Terry Noyes was not eligible for admission. Although by enacting RSA 135–C:13, which guarantees to a "committed patient the right to adequate and humane treatment", *Chasse v. Banas*, 119 N.H. 93, 97, 399 A.2d 608 (1979), the legislature "waived any claim of sovereign immunity in an action for damages where a patient at the N.H. Hospital seeks to vindicate the denial of his rights", *Id.*, Terry Noyes was never committed to the N.H. Hospital, nor did he qualify as a patient of the hospital at any time during his attempted voluntary admission by guardian on November 4, 1990. A review of RSA 135–C:1 *et seq.*, reveals that one may apply for services subject to the determination of the program or facility that the person is eligible to receive services pursuant to RSA 135–C:13. *See* RSA 135–C:12 (III). While it is true

that by enacting RSA 135–C:13 the legislature imposed a duty upon those employed by the hospital to provide adequate care and treatment to their patients, *Chasse, supra,* there is no duty under the statute to accept every person who seeks admission, nor does the statute create in the mentally impaired an absolute right of access to treatment. The only duty owed to such a one is that they not be discriminated against based on "race, color or religion, sex, or inability to pay". RSA 135–C:13. Since RSA 135–C:1 *et seq.* does not guarantee every mentally disabled person the absolute right of access to treatment, the state has not waived its sovereign immunity with respect to this claim. Viewing the facts in the light most favorable to plaintiffs, their claim alleging negligent failure to admit is not one upon which relief may be granted and it is therefore dismissed. Therefore the hospital enjoys sovereign immunity as to those claims arising from the alleged actions or inactions of its employees during that time period.

■ However, as to plaintiffs' claims of negligent treatment during Mr. Noyes' subsequent stay at N.H. hospital which allegedly led to an infection and surgery to his leg the state has waived its sovereign immunity under RSA–C:135–C:13 and is subject to suit for its alleged negligence. *See Chasse* at 97, 399 A.2d 608.

**Pendent State Claims**

■ Because the plaintiffs' equal protection claim has survived defendants' motion to dismiss this court retains jurisdiction over plaintiffs' pendent state law claims alleging negligence on the part of the defendant doctors.

Defendants, arguing in the alternative, claim that these state law claims should be dismissed because they fail to state a claim upon which relief may be granted. The court is unaided by plaintiffs' objection to defendants' motion as it fails to address this contention. As discussed above, plaintiffs' claim damages for the alleged negligent monitoring and treatment of Terry Noyes' left leg during his time at the N.H. Hospital, which alleged negligence resulted in an infection in the leg requiring emergency treatment and a second operation at Concord Hospital. *See* Doc. 1, p. 8, count 61. Taken as true, count 61 of plaintiffs' complaint states a viable cause of action and cannot be dismissed.

*Conclusion*

Plaintiffs' claim pursuant to the Due Process Clause of the Fourteenth Amendment is dismissed since at no time did defendants ever impose any restraints on plaintiff's liberty, either through institutionalization or incarceration, which would constitute a deprivation of plaintiff's liberty interest thereby triggering the protections of the Due Process Clause.

Plaintiffs' claim of discrimination based on the degree of Mr. Noyes' disability states a viable cause of action under the Equal Protection Clause of the Fourteenth Amendment and survives defendants' motion to dismiss.

Plaintiffs state a viable cause of action for the alleged negligence of the defendants in failing to properly monitor and treat the injury to plaintiff's leg. The state, through the enactment of RSA 135–C:13, has waived its sovereign immunity with respect to this claim.

Lastly, plaintiffs' claim alleging that the defendants were negligent in failing to admit Terry Noyes voluntarily on November 4, 1990 is dismissed. RSA 135–C:1 et seq. does not guarantee every mentally disabled person the absolute right of access to treatment and therefore the state has not waived its sovereign immunity with respect to this claim.